## CONLEY *vs.* POOLE.

1. A new militia district having been cut off from one already established, and the justice of the peace in the old district having brought a *quo warranto* against the justice elected in the new district, on the ground that he is interested in the costs and fees arising from the territory alleged to have been illegally cut off, the case turns upon the legality of the creation of the new district. If that was legal, the plaintiff was not interested in the question of the election therein.

2. By the act of 1880 power is conferred on the commissioners of roads and revenues of Fulton county to lay out new militia districts.

(*a.*) That act is not unconstitutional. Construing article eleven, section three, paragraph one, of the constitution of 1877, together with article six, section nineteen, paragraph one, authority is granted to the legislature to create county commissioners in such counties as may require them, and to define their duties. When such laws are enacted, they should be uniform as to counties to which they apply.

(*b.*) The words, " commissioners of roads and revenues," are descriptive terms derived from the principal functions of those officers, and are not words limiting their powers.

3. The three commissioners provided for by §484 of the Code are mere agents to lay off and define the lines of a new district. It is the ordinary (now the county commissioners) who determines the expediency of its creation.

(*a.*) The chancellor did not abuse his discretion in refusing a *quo warranto* in this case.

County Matters. Constitutional Law. Officers. Before Judge HILLYER. Fulton Superior Court. October Term, 1881.

To the report contained in the decision it is necessary to add only the following:

In January, 1881, Conley was elected justice of the peace in the 530th district, G. M., of Fulton county.

In June, 1881, a petition was filed by certain citizens to establish the lines of 1332d district, G. M., and to create a new district, to be composed of a part of 530th and

of 1332d districts. Under section 484 of the Code, three commissioners were appointed. The order referred the matter to them, with instruction to report upon the necessity and expediency of creating the new district and to define the lines of the same. Two of the commissioners so appointed reported that it was inexpedient to create the new district, and defined the line between the 1332d and 530th districts. The third commissioner reported that it was expedient to create the new district, and defined lines therefor. Upon the return of these two reports in September, 1881, the commissioners of roads and revenue ordered that the new district be created, with boundaries as described in the minority report. They also ordered an election for justice of the peace in that district. It was held in October, 1881, and Adam S. Poole was declared elected. Conley thereupon filed his petition for a writ of *quo warranto.* A demurrer was filed to the petition, which was sustained, and Conley excepted.

E. F. HOGE; T. P. WESTMORELAND, for plaintiff in error.

J. T. PENDLETON, for defendant.

JACKSON, Chief Justice.

1. The question in this case is controlled by the authority of the board of commissioners of roads and revenue of the county of Fulton to organize a new district in that county, and by the manner in which that board exercised the authority, if conferred, whether it was done according to law. If the district has been legally created, the plaintiff in error has no further interest in the question, for his only interest is in fees and costs he might make if the district cut off remained a part of his, where he is justice of the peace still, and before a writ of *quo warranto* will be granted him he must show an interest in the office.

He was no contestant for it in the new district, and is only interested in keeping the territory of the new in the old, where he presides, so as to retain the cases arising therein and realize costs from them. Code, §3203.

2. Did the county commissioners have authority to lay off the new district?

The power is conferred by the act of December 3d, 1880, in express terms. Acts of 1880–81, p. 508.

Is this act constitutional? It is argued that it is not, because these county commissioners' courts must be uniform under article eleven, section three, paragraph one of the constitution, codified in section 707 of supplement to the Code. It is there provided "that whatever tribunal or officers may hereafter be created by the general assembly, for the transaction of county matters, shall be uniform throughout the state, and of the same name, jurisdiction and remedies, except that the general assembly may provide for the appointment of commissioners of roads and revenues in any county."

As argued for plaintiff in error, there seems to be serious conflict between the body and the exception of this paragraph. The one provides for uniformity in tribunals for the transaction of county matters "throughout the state," and the other excepts from the operation of the body of the paragraph any provision for the appointment of commissioners of roads and revenue. Hence the argument is, that the exception can include commissioners for those two things only, that is for roads and for revenue.

But that it was not the intention of the framers to require a general law, running over the entire state, seems clear from another part of the constitution. Article six, section nineteen, paragraph one; Sup. to. Code, §656, where it is provided that "the general assembly shall have power to provide for the creation of county commissioners in such counties as may require them, and to define their duties." This power necessarily contemplates

local laws for those counties only which require them, and not for all the counties ; and power is given here to define the duties of these county commissioners without restricting those duties to roads and revenue ; so that this provision, which occurs first in the constitution, seems to accord with the exception to that first cited, and to be also in conflict with a broad construction of the body of it, extending it to a general law. We are not prepared, therefore, to hold, in the teeth of this judgment of the general assembly in passing this local law, and the judgment of the court below in affirming this legislative construction of the constitution, that this local act is unconstitutional. The true construction would seem to be that local laws appointing commissioners may be enacted, but when enacted they should be made uniform in operation in those counties which shall require them. The exception cannot mean that commissioners may be appointed by local laws, but only for roads and revenue, and may not be uniform as to those two things only, because those words are merely descriptive of the officers of the court. The commissioners of roads and revenue embraced in their jurisdiction other county matters besides these by repeated legislative acts before the constitution of 1877, and the name was generic, designed to denote the office, and not to confine the duties of the officers to these two items. The conclusion is imperative that the words, commissioners of roads and revenue, were used by the framers of the constitution as naming the tribunal, and not restrictive of its powers when created.

If these local laws be not uniform in the counties where they operate, and "which require them," it may be the duty of the general assembly so to make them, but in the main we presume that they are already so. At all events the paragraph is obscure. It is not clear that this act is repugnant to the constitution, and unless it be clear, it is our duty to give the doubt to the legislative will, and to sustain the constitutionality of the law which has been

enacted.  Uniformity would appear to be as desirable in matters of revenue and in the public roads as in other county matters.  Indeed these two items are the most important.  The money by which the county wheels are all moved, and the highways by which the people connect their commerce and business and intercourse of every sort, stand at the head of the list of county matters, and hence the generic name, commissioners of roads and revenue, was adopted to designate the office.

Whilst it is difficult to harmonize the exception with the body of the paragraph without destroying the latter, as is ably put by counsel for plaintiff in error, it seems equally difficult to harmonize the two paragraphs, those in the eleventh and sixth articles, with each other, if we hold that it is unconstitutional to provide for county commissioners for any purpose except for roads and revenue, when the paragraph in the sixth article is explicit that county commissioners may be provided for such counties only as require them, and their duties defined, without any restriction as to what those duties shall be.

3. Did the county commissioners follow the law in laying out the new district?  It is argued that they did not, because the order appointing three commissioners, under section 484 of the Code, left it to them to determine the expediency of the new district, and a majority of them decided and reported that it was inexpedient, while but one held and reported that it was expedient.  In our judgment it was for the ordinary to determine the question of the expediency of the creation of a new district under section 484 of the Code, and the three commissioners were merely agents to lay off and define its lines.  Now, the commissioners of roads and revenue for Fulton county have the same powers that the ordinary possessed at the adoption of the Code, and the three commissioners appointed by them are merely their agents, as they had been those of the ordinary, to lay out the district.  So far as they authorized them to report on expediency, it

was outside of the statute, and the report is not binding on the commissioners of roads and revenue ; and as the district was laid out and defined, so that the commissioners could judge for themselves of its expediency, they could act as well upon it on a minority as a majority report on the mere question of expediency, or indeed without any report on that question, because it was a question for themselves. So, on the subject of a compliance with the law, as laid down in the Code, we think that the commissioners have substantially complied therewith, so much so, at all events, as not to require this court to force the court below to issue the writ of *quo warranto*, which rests very much in the discretion of that court, or rather the judge of that court, in a matter of private rights. On such a matter, involving that question, this court will not control the judge of the superior court, except upon a clear case.

Cited for plaintiff in error: Art. 11, sec. 3, par. 1 ; art. 6, sec. 19, par. 1, constitution of 1877; Code, §§5127, 1873, 484–5–6, *et seq ;* also sec. 4, subsec. 5 ; Cobb's Digest, p. 187; Irwin's Code, §§522, 346, 347; *Bailey vs. Bazemore*, 66 *Ga.*, 537; Code, §488; acts of 1880–81, pp. 508–546; const. 1877, art. 3, sec. 7, par. 18.

For defendant: Acts of 1873, pp. 226, 281, 286, 301, 303 ; acts of 1874, pp. 339, 340, 342, 347, 349 ; acts of 1875, pp. 239, 243, 248, 251 ; acts of 1876, pp. 300, 275, 293, 297 ; acts of 1877, pp. 248, 250, 264; acts of 1878–9, pp., 337, 340 ; High on Ex. Remedies, §§605, 628, 707 ; 29 *Ga.*, 437. Citations cons. as for plaintiff.

Judgment affirmed.