Elliott *vs.* Gammon *et al.*, commissioners.

ELLIOTT *vs.* GAMMON *et al.*, commissioners.

1. The commissioners of roads and revenues of Floyd county having, under a special act of the general asembly, purchased the bridges which adjoin and touch the city of Rome, and having control thereof as county officers by reason of such purchase of them, and making them free instead of toll bridges, as formerly, no reason appears why they may not rebuild them when washed away by a flood. No objection is made by the city, but only by a citizen and tax-payer of the county.

2. It is for the commissioners, and not for the complainant, to determine whether immediate taxation or a new debt in bonds, with gradual taxation to pay it, is more advisable. When they decide, and the requisite number of voters authorize the new debt, no further objection can be made.

3. The constitution of 1877 dec'ares that the debt of a county shall not exceed seven per cent. of the assessed value of its taxable property, and that it shall not incur any new debt without the assent of two-thirds of the qualified voters thereof at an election for that purpose, to be held as may be prescribed by law. The act of October 14, 1879, prescribed the manner in which such a vote should be taken; and if an election be so held, and two-thirds of the voters sanction the new debt within the constitutional limits, it binds the county.

(*a.*) It is nowhere alleged that the present debt of the county exceeds seven per cent. of the assessed value of all its taxable property.

(*b.*) Such an election must be held under a general law, and a subsequent local law, providing for a different mode of holding the election, would not be valid.

May 1, 1886.

County Matters. Roads and Bridges. Floyd County. Constitutional Law. Elections. Before Judge BRANHAM. Floyd County. At Chambers. April 24, 1886.

Reported in the decision.

UNDERWOOD, ROWELL & CHENEY, for plaintiff in error.

No appearance for defendants.

JACKSON, Chief Justice.

James M. Elliott applied by bill in equity to the judge of the superior court of the county of Floyd, holding and

exercising chancery powers, for a writ of injunction against the commissioners of roads and revenues of that county, to prohibit them from incurring a debt in coupon bonds of $40,000 in order to re-build certain bridges swept away by the recent flood. The chancellor refused the writ of injunction, and error is assigned on that refusal.

The allegations are that the bridges are necessary, and ought to be re-built, but that the proper course to raise the money is by taxation, and not by incurring a debt, though the commissioners propose to take a vote of the people upon the question of incurring the debt, and do not contemplate creating the bonded debt unless authorized by that vote; that some of the bridges are partly in the city of Rome, and the commissioners cannot so re-build without the sanction of the municipality of Rome, and that the commissioners cannot hold the election which they propose without legislative authority.

It appears from the allegations in the bill that the commissioners, by special act of the general assembly, purchased the bridges which adjoin and touch the city, and control the same as county officers by reason of such purchase of them, and making them free to all the people, they having been formerly toll bridges. We do not see, therefore, why they may not re-build that which the county, by authority of law, purchased for the people of the county. Moreover, it is inconceivable that the city will object to the county re-building bridges essential to its commercial prosperity. Again, the city has made no opposition up to this time, and does not intervene, as a party, and why the complainant assumes to interpose for the city nowhere appears in this record, his allegation being that he is a citizen and tax-payer of the county. We are unable, therefore, to see any valid reason on this ground to enjoin the action of the commissioners.

It is for the commissioners, and not for the complainant, to determine whether immediate taxation or a new debt with gradual taxation to pay it by degrees as the bonds

fall due [is best]; or, in other words, whether it is more advisable to raise forty thousand dollars out of the people in one year, and that the year of this terrible freshet, which must have damaged private, as well as public property, or to incur the debt and raise it in annual taxation for smaller sums annually drawn from the people. When they decide, and the requisite number of voters authorize the new debt, all other mouths are shut. The minority must yield.

So that the whole question turns on the authority of the commissioners under the constitution and laws to order the election, and if the result be favorable by the vote, to issue the bonds.

The constitution declares that the debt of the county shall not exceed seven per cent. of the assessed value of its taxable property, and that it shall not " incur any new debt . . . . without the assent of two-thirds of the qualified voters thereof at an election for that purpose, to be held as may be prescribed by law." Constitution, Code, §5191.

An act was passed prescribing the manner of that vote to test the desire of the people, on the 14th of October, 1879, codified in §508 (i), (j), (k), (l) and (m) of our Code.

Therefore, the constitution sanctions the action of the commissioners in the 1st paragraph of the 7th section of the 7th article thereof, codified in section 5191 of the Code, when the law shall prescribe how the election shall be held, and the act of 1879 prescribes how; and when the election held in that way by a two-thirds vote sanctions the new debt, it binds the county. It is nowhere alleged that its present debt exceeds 7 per cent. of the assessed value of all its property, and what is not alleged does not exist, so far as this case is concerned.

In the *County of Dougherty vs. Boyt et al.*, 71 *Ga.*, 484, it was held that this general law, codified in section 508 (i) *et seq.*, must be followed over a subsequent local law on the subject of a bonded debt for a bridge; if, therefore, any special law of the general assembly should now pre-

scribe a different mode, it would be invalid, but the general law would rule, as codified in §508 (i), etc.

Judgment affirmed.