THE COUNTY OF PULASKI v. THOMPSON & COMPANY; and the same v. VAUGHN.

1. Claimants have no right to move to quash a *fi. fa.;* their proper motion is to dismiss the levy.
2. Under the act of 1886 creating the board of commissioners of Pulaski county, they had the power to audit and examine the accounts of the tax-collector thereof; and if in such examination they ascertained that he was indebted to the county for taxes collected and not paid to the treasurer, they had the power to bring him to a speedy settlement by issuing an execution against him, they having exclusive jurisdiction of the matter.
(*a*) This act is to be construed with reference to the general law in connection with such matters.
3. It did not matter whether the commissioners or their clerk signed the execution. If the clerk had signed it, he would have done so by order of the commissioners.
4. Construing together the two sections of the constitution found in §§5228, 5177 of the code, the legislature has the power to pass separate and distinct acts for any counties which require county commissioners; and it is not necessary that these acts shall be uniform in their operation in all such counties. The intimation in *Conley* v. *Poole*, 67 *Ga.* 254, to the contrary, was *obiter*.
July 8, 1889.

County matters. Claims. Practice. Taxes. Laws. Executions. Powers. Constitutional law. Before Judge KIBBEE. Pulaski superior court. November term, 1888.

Reported in the decision.

JORDAN & WATSON, by brief, for plaintiff.
MARTIN & SMITH, for defendants.

SIMMONS, Justice.

The same questions were made in both of these cases, and they were argued together; and this decision and judgment will apply to both.

The commissioners of roads and revenues of Pulaski county issued an execution against Pollock, the tax-collector of the county, and the sureties on his bond, for the sum of $2,512, with twenty per cent. per annum

penalty, from the 21st of May, 1888. The execution recited that it was issued because Pollock, as tax-collector for the year 1887, failed to make a settlement of taxes due the county, and pay into the treasury of the county the amount of said taxes due. The execution was signed by the five persons constituting the board of commissioners. It was levied, among other things, on certain land in the town of Cochran, and also on a horse and buggy, all of said property being levied on as the property of Pollock. A. J. Thompson & Co. claimed the land, and Vaughn claimed the horse and buggy. When the issue thus made came on for a hearing, the plaintiffs in execution tendered in evidence the *fi. fa.* The claimants in each of the cases made objection to it, and moved that it be quashed, on the grounds, (1) because the commissioners have and had no power, under the act approved December 20th, 1886, creating said tribunal, to issue *fi. fas.* summarily against the defaulting tax-collector and his sureties, said act failing to prescribe any mode for compelling payment by the officers of the county of money collected by them; and (2) because the *fi. fa.* was not signed by the clerk of said board of commissioners, but was signed by the commissioners themselves, when it should have been signed by said clerk and borne test in the name of said commissioners. The court sustained the motion, and ordered the *fi. fa.* quashed on both of said grounds; to which decision the plaintiff in execution excepted in each case.

1. We think the court erred in sustaining these demurrers. Claimants have no right to move to quash a *fi. fa.* which has been levied on property claimed by them. It is no concern of theirs whether the *fi. fa.* is good or bad. Their proper motion would have been to dismiss the levy. If that motion had been granted, it would have released their property from seizure by the sheriff. As the validity of these executions was argued at great length before us, we will not put our judgment

on this technical ground, but will consider the real merits of the case.

2. The main question argued before us was, as to whether the commissioners had power and authority to issue these executions against the tax-collector and his sureties. The trial judge decided that they had no such power. We think he erred in this ruling. The act creating this board of commissioners (acts 1886, 261) declares that "they shall have exclusive jurisdiction in said county over the following matters." Among them, in the 5th subdivision of §5, is the following: "In examining and auditing the accounts of all officers having the care, management, collecting or disbursing of the money of the county, and in bringing said officers to a speedy settlement." Under this section, they had the power to audit and examine the accounts of this officer, and if in the examination of these accounts they ascertained that he was indebted to the county for taxes that he had collected and not paid over to the treasurer, power was given them to bring him to a speedy settlement. While there is no express provision authorizing them to issue an execution against him and his sureties, it is difficult to see how they could bring him to a speedy settlement in case he refused to pay over the money, unless they issued an execution against him. The power to audit and examine, and to bring him to a speedy settlement, would be useless unless they had the means of enforcing the examination and settlement. It will be remembered that the act gave the commissioners exclusive jurisdiction over this matter. They have an exclusive jurisdiction, and no other tribunal would have a right to issue this execution and bring this officer to a speedy settlement. The legislature certainly did not intend to compel this county to resort to a long and tedious suit in the courts for the collection of its money.

This act is to be construed with reference to the general law of the State in connection with such matters, as found in the code. The general law gives to the officers having the control of State or county taxes, the power to issue executions against defaulting tax-collectors in the summary manner pursued by the county commissioners in this case. We think, therefore, that this power to issue execution is implied in the authority given to the commissioners to bring him to a speedy settlement, and that this was the intention of the legislature when it passed the act. Otherwise the power given would be nugatory.

3. It was argued by the defendants in error that if the commissioners did have this power to issue execution, the execution was not properly issued in this case, because not signed by the clerk. We do not think it matters whether the commissioners signed the execution, or their clerk. If the clerk had signed it, it would have been by order of the commissioners. The signing by the commissioners of their own names to the execution did not, in our opinion, make it invalid. Besides, the only duty required of the clerk in the act, is the keeping of a book in which he shall record the proceedings of the board.

4. It was argued by the able counsel who represented the defendants in error that, admitting that under this act the commissioners were authorized to issue the execution, and that it was properly issued, still it was void, because the act itself was unconstitutional and void, under article XI., §3, of the constitution (code, §5228), which is as follows: "Whatever tribunal, or officers, may hereafter be created by the General Assembly for the transaction of county matters, shall be uniform throughout the State, and of the same name, jurisdiction and remedies, except that the General As-

sembly may provide for the appointment of commissioners of roads and revenues in any county." It was claimed that this act was not uniform with others passed for other counties of the State having boards of commissioners. We do not agree with this construction of the constitution. Construing this section of the constitution together with §19 of article VI (code, §5177), which is as follows: "The General Assembly shall have power to provide for the creation of county commissioners in such counties as may require them, and to define their duties," our opinion is, that the legislature has the power to pass separate and distinct acts for any counties of the State which may require county commissioners. Nor is it necessary that these acts shall be alike or uniform in their operation in all counties which have or may require county commissioners therein. These sections do not require the legislature to pass a general law defining the duties and powers of county commissioners. Section 5228 seems to contemplate that all tribunals or officers which may be created by the legislature for the transaction of county matters, shall be uniform throughout the State, except where county commissioners are required by any county. When commissioners are required by a county, we think that the constitution does not require that the acts creating them shall be uniform. In order to make the acts uniform, the legislature would have to pass a general law applicable to all counties which require county commissioners, and this, we have seen, the constitution does not require. Or the legislature would have to pass the same act for every county which it passed for the first county applying for the same under the constitution of 1877.

We are strengthened in this view by the contemporaneous construction placed upon these sections by the legislature, commencing with the first session of the

legislature after the adoption of this constitution. Each and every legislature which has met since that time has passed acts of this character, creating county commissioners, and very few, if any, of these acts are alike in their provisions. There is a difference in the power given to the commissioners, the manner of their election, their number and their compensation, and other differences which it is unnecessary to mention. This shows the construction placed upon these sections of the constitution by the members of the legislature from the adoption of the constitution to the last session of that body; and we know of our own knowledge that there were many able lawyers in the successive legislatures, whose opinions on questions of this sort have great weight with us. It is true that in the case of *Conley* v. *Poole*, 67 *Ga.* 254, JACKSON, C. J., intimates that these acts should be uniform in operation in those counties which shall require them; but that, in our opinion, was *obiter*, as it was not necessary to decide that question in the case which he had under consideration. For these reasons we hold that it is not necessary for these acts creating county commissioners in different counties to have a uniform operation in every county that requires them. Therefore the act under consideration is constitutional. *Judgment reversed.*