### MATHIS *v̇*. JONES.

1. The code, as moulded and modified by general legislation on the subject of fences, has established an optional system of fence law, general in its nature and of uniform operation throughout the State.  This being so, there is no power to legislate specially for two militia districts so as to dispense as to them with the popular vote provided for in the code of 1882, the constitution of 1877 declaring that " Laws of a general nature shall have uniform operation throughout the State, and no special law shall be enacted in any case for which provision has been made by an existing general law."

2. It follows that the act of December 26th, 1888 (pamp. p. 320), requiring unconditionally that all domestic animals be kept from running at large in the 1002d and 1070th districts G. M. in Macon county, and declaring their owners liable for any damage done upon the lands of other persons, is unconstitutional and void.
October 3, 1890.

Fences. Constitutional law. Statutes. Before Judge FORT. Macon superior court. May term, 1889.

On March 2, 1889, the plaintiff's cow was running at large on the land of the defendant, who had no fence. Both of them resided in the 1070th district of Macon county. The defendant impounded the animal under the act of December 26, 1888, at once notified the plaintiff and demanded compensation for the damages sustained, as well as pay for impounding and feeding the stock. The plaintiff refused to pay anything or to give or tender bond, and made affidavit for possessory warrant before the judge of the county court; and the same was issued by that judge and executed. Plaintiff did not contest the reasonableness of defendant's charges for damages and feeding, but insisted that there was no valid subsisting stock law in his district. The judge of the county court awarded the property to the defendant; and by *certiorari* the plaintiff assigned this judgment as contrary to law and the facts, and alleged that the act of the legislature is unconstitutional in that it creates a special law, whereas there is a general law covering the same subject-matter in sections 1443–1455(i) of the code. The superior court affirmed the judgment of the county court, and refused to sustain the *certiorari;* and the plaintiff excepted.

HINTON & CUTTS and L. J. BLALOCK, for plaintiff.

SIMMONS & KIMBROUGH, for defendant.

BLECKLEY, Chief Justice.

The matter now contained in the code of 1882, §§1443–1448, corresponding to §§1456–1461 of Ir-

win's Revised Code, constituted the general fence law of the State when the act of 1872 was passed. Lawful fences then recognized by the code were to be of rails, palings, ditches or navigable watercourses. The act of 1872 declared that "in each and every county of this State which shall adopt the provisions of this act in the manner hereinafter provided, chapter 8, paragraph 1, title 15 of Irwin's Revised Code, of Georgia, embracing sections 1456, 1457, 1458, 1459, 1460 and 1461, be and the same is hereby repealed, and the boundary lines of each lot, tract or parcel of land in said county shall be and the same are hereby declared a lawful fence." The act then prescribed a system of local option by which each and every county in the State could adopt its provisions by means of a popular election, on the same terms as to all. It required that domestic animals should not be allowed to run at large beyond the lands of their owners in counties voting to adopt the act, and subjected the owners to answer for all damages done upon the premises of other persons. Acts 1872, p. 34; Code of 1882, §1449 *et seq.* This act passed into the code of 1873, and section 1455 of that act was amended by the act of August 26th, 1881, but only as to certain details in respect to ordering and holding elections. Acts 1880–1, p. 60; Code 1882, §1455. By the act of September 29, 1881, the provisions of the general fence law in respect to local option were extended and made applicable to all militia districts. Acts 1880–1, p. 79; Code, §1455(a). The original code, touching fences, and these local option statutes engrafted upon it, are *in pari materia* and are to be taken together as one statute. The code of 1882 is consequently to be read, construed and applied as if there never had been but one statute on the subject, and as if that statute had contained originally the local option feature applicable alike to all the counties and

militia districts of the State. In this condition of the general law, the General Assembly, by an act passed December 26th, 1888 (pamph. 320), required unconditionally that all domestic animals be kept from running at large in the 1002d and 1070th districts, G. M., in Macon county, and declared their owners liable for any damage done upon the lands of other persons.

1. The constitutionality of this last act is the question now for determination. The constitution of 1877 (art. 1, sec. 4) declares: "Laws of a general nature shall have uniform operation throughout the State, and no special law shall be enacted in any case for which provision has been made by an existing general law." The law embraced in the code of 1882 for the exercise of local option as to fences, is a general law having uniform operation throughout the State, notwithstanding it embodies the option principle to be exercised locally and separately by each county or each militia district. We think the sounder view, and the one which must finally prevail, is that laws of this character are rightly classified as general and as having uniform operation. Gordon v. The State, 46 Ohio State, 607; Paul v. Gloucester Co., 50 N. J. L. 585, s. c. under the name of The State v. Circuit Court, 15 Atl. Rep. 272; The State v. Pound, 93 Mo. 606, 6 S. W. Rep. 469.

A decisive proof that such laws are not local or special within the meaning of the constitution of 1877 is, that by another provision of the same constitution, every local or special bill has to be advertised beforehand in the locality where the matter or thing to be affected may be situated. Code, §5075. There could be no reason for advertising in one locality rather than in another the intention to apply for a law which affects all localities, and all of them alike. The bill for such a law, if advertised at all, would have to be advertised all over the State. We can say with certainty that the

constitution does not contemplate or provide for giving any previous notice as a preliminary to the enactment of a law of this character. Yet it expressly requires local or special bills to be advertised without exception; and the only constitutional reason which can be given why a local option bill for the whole State could be introduced and passed without previous notice is, that such a bill would be general and not local or special.

Another test by which general laws may easily be distinguished from those which are local or special is, that the former, unless altogether temporary, would naturally and properly belong to the general body of statute law, and would constitute proper matter for codification. The code is a fit place for all permanent laws territorially general. Under this test there can be no doubt that the local option fence law is a general law. Any intelligent person, whether a lawyer or not, would say that it was fitly inserted in the code, first of 1873, and again in that of 1882. Every reader whose opinion on such a question would be worth regarding, would expect to find it in every successive edition of the code, so long as it stands unrepealed. And being a general law for the whole State, it is necessarily general in its nature.

The words of the constitution are: "Laws of a general nature shall have uniform operation throughout the State, and no special law shall be enacted in any case for which provision has been made by an existing general law." The generality here spoken of is territorial generality. This is indicated by the words "throughout the State." A law may take its general nature either from its territorial comprehensiveness or from the nature of its subject-matter, or from both. A law may be of a general nature notwithstanding its subject-matter is of a local nature, its general nature being due alone to its territorial comprehensiveness. A law which is general

by reason of its territorial comprehensiveness only,
can no more be limited in its operation territorially by
a subsequent special law than one which is general in
the nature of its subject-matter.    You cannot make
a general statute cease to be general otherwise than by
another statute repealing it.    That is, under the con-
stitution of 1877, you cannot repeal a general law in
part by a local law; for in the  eye of the  constitution,
every local law is special relatively to a general law.  A
·law once territorially general must remain so until it is
wholly repealed, however its provisions may be other-
wise varied by subsequent  legislation.    One and the
same law for the whole State must be a general law ;
and a general law must while it exists have a general
nature, whether its  subject-matter be of a general or a
local nature.    In the light of the present constitution
it would be absurd to say of any valid general law that
it is not a law of a  general  nature, though it might be
quite correct to say of some general laws that the nature
of their subject-matter is local.    But no general law,
whatever be its nature, can, under that constitution, be
put aside by a subsequent special law.    If at any given
time there is upon the statute book, taken as a whole,
a general statute which provides for the case in hand,
any local statute providing for it would necessarily con-
tain the same or different provisions ; if the same, it
would be superfluous; and if different, it could have no
effect without making the general statute cease to be
territorially general and thereby arresting its uniform ·
operation throughout the State.  The scheme of our pres-
ent constitution is not only to have general statutes uni-
form in their operation throughout the State when they
are enacted, but to have them remain so as long as they
remain in force.    They cannot be deprived of their force
in one part of the State without simultaneously depriv-
ing them of force in every other part.    They can be

killed but not mutilated; the smallest of their territorial members cannot be cut off. There is no way to convert a statute territorially general into one territorially special. It may be altered at will save that whilst it has life it must live all over the State with equal vigor, and can be excluded from no nook or corner in which there is a subject-matter for its operation. Any of its attributes may be changed or destroyed except its territorial generality and uniformity. These must be as enduring as its life. If it is the will of the legislature to make a law which is operative throughout the State, its operation must be uniform. When general in the nature of its subject-matter,—such as marriage, wills, inheritance, administration, etc., etc., it must, to be a law at all, be a general law. No local or special laws touching the essentials of these matters can be enacted, whether they trench upon a prior general law or not; but where the subject-matter of legislation is of a local nature,—such as fences, sale of intoxicating liquors and other matters of local police, laws may be general or special at the will of the legislature, with the sole restriction that, whilst a general law prevails, no special law can be enacted in any case for which the general law provides. All special or local laws must find material upon which to operate outside of the scope of general laws. They can withdraw nothing from the domain of general laws which lie within their purview; for to do this would destroy their uniform operation as general laws for the State at large. Touching anything whatever of a local nature there may be a local law, provided no existing general statute applies to it; but the same thing cannot be regulated one way by a general statute, and another way by a subsequent local statute. To allow this would be to allow a local statute to limit a prior general one—that is, to repeal it *pro tanto*, which, under the present con-

stitution, cannot be done. Upon many subjects the legislature may have a general system or none, at its pleasure, but if a system has been adopted, it must be adhered to so long as it exists. It may be abolished or varied at will, but cannot be violated by the enactment of a local or special law which conflicts with it. Ohio and Kansas have in their constitutions words coinciding with the first clause above quoted; and the constitution of Maryland contains the second clause in nearly the same words; but no State, so far as we have discovered, except our own, has adopted both clauses as part of one and the same instrument. Several States have provided in their constitutions that no special law shall be enacted where a general law can be made applicable; Georgia, on the contrary, only requires that general laws shall either be left general or repealed, and that if any existing general law covers the case contemplated, no special law providing for the case shall be enacted. There is no command to pass a general law rather than a special one to accomplish the legislative purpose, but only to forbear cutting in on general laws by special laws. No general law of the State can be left standing in some places and in other places be swept away. In dealing with such laws three methods are open to the legislature: to leave them as they are, to modify their provisions, or to repeal them. A law territorially general, and a subsequent law territorially special, for the same order of cases, are mutually exclusive of each other. The legislature may have either, but in the nature of things cannot have both.

2. When the special act of 1888 for these two militia districts in Macon county was passed, the code of 1882 on the subject of fences was an "existing general law," and it made provision for each of these districts as well as for every other district in the State. Manifestly, therefore, the special law was forbidden by the

constitution. *County* v. *Boyt,* 71 *Ga.* 484; *Elliott* v. *Gammon,* 76 *Ga.* 766; *Houston County* v. *Killen, Id.* 826. To give effect to the special law would suffer it to limit the general law by withdrawing these two districts from its operation, thereby destroying the territorial generality of the local option principle as embodied in the general law. It is discretionary with the General Assembly to extend the principle of local option to all the State or not, but having once done so, it must abide by the principle until it ceases to be a feature of the general law.

In view of the large mass of existing legislation which will probably be affected by the principle on which we decide this small case, we are profoundly sensible of the wide and possibly the grave consequences to whole communities which the decision involves. We have not reached our conclusion without long deliberation and much reluctance, but the constitution, which is the supreme law for us as well as for the General Assembly, declares that "Legislative acts in violation of this constitution or the constitution of the United States, are void, and the judiciary shall so declare them." In obedience to this high behest, we discharge the solemn duty which we are commanded to perform.                    *Judgment reversed.*