TOOLE, mayor, *et al. v.* ANDERSON *et al.*

No. 9753. OCTOBER 17, 1933. REHEARING DENIED NOVEMBER 9, 1933.

*E. W. Maynard* and *J. Ellsworth Hall Jr.*, for plaintiffs in error. *Walter T. Johnson* and *Park & Strozier*, contra.

*John J. Bouhan, Shelby Myrick, Charles B. Shelton*, and *Ralph H. Pharr*, for persons at interest, not parties of record.

GILBERT, J. Two statutes were enacted by the General Assembly and approved on March 10, 1933 (Ga. Laws 1933, pp. 269, 1025). The purpose of each was to establish a board of tax appeals, in lieu of arbitration. One act was expressly operative in counties having a population of not less than 75,000 and not more than 100,000, by the last or any future census of the United States.

The other act was an amendment to the charter of the City of Macon. In both of the acts such board of tax appeals was authorized and empowered to act in tax appeals from assessments of taxes on property within Bibb County, whether within or without the City of Macon. In both acts the board was empowered to require the attendance of witnesses and the production of papers, and punishment as for contempt by the superior court was provided. The act first mentioned provides that "there is hereby created a board of tax appeals, which is hereby given authority and power to finally determine and assess the taxable value of property coming before such board on appeal from returns and/or assessments from the county taxing authorities and from taxing authorities of any municipality in such counties, which said board of tax appeals shall consist of three members to be elected by the first grand jury of the counties within the operation of this act, convened or reconvened by order of the court after this act goes into effect." The second act mentioned provides "there is hereby created a joint board of tax appeals for the City of Macon and County of Bibb, which board shall consist of three members to be elected by the grand jury of Bibb County drawn for the November, 1932, term of the superior court thereof; and if said grand jury shall have adjourned for the term, the judge presiding in said superior court shall recall said grand jury for service at the February, 1933, term of said court, as provided by the act approved August 21, 1905, providing for four terms of the superior court of Bibb County, for the purpose of electing the members of said board." The judge of the superior court reconvened the grand jury which had served at the November, 1932, term, in accordance with the terms of the statute last mentioned. Three commissioners were elected. These commissioners proceeded to hear evidence on tax appeals. In the course of their proceedings they served a subpœna on Toole, mayor, F. J. Bishop, W. P. Gailliard, and I. L. Dunwoody, constituting the board of tax-assessors of the City of Macon, requiring them to attend a meeting of the board to testify on tax appeals, and to produce documents in their possession. The mayor and others subpœnaed appeared before the board and declined to testify, on the grounds that the statutes were invalid for stated reasons. The board of tax appeals cited them to the judge of the superior court for punishment as for contempt. The judge,

after hearing evidence, rendered a judgment declaring the witnesses in contempt and assessing a fine. The exception is to that judgment. The acts were attacked upon numerous constitutional and other grounds. The grounds necessary for an understanding of the decision are stated herein below.

On the argument of this case, on July 17, counsel, impressing the court with the importance to the public of the earliest decision consistent with other pending matters, urged an advancement of the case. The court accordingly immediately took the case under advisement and rendered a decision on September 14, 1933. A motion for rehearing was filed. On filing the motion counsel requested the court to vacate the judgment, so that jurisdiction would not be lost by reason of the closing of the term within a very few days. The request was granted. The case was considered again, in the light of the motion for a rehearing, the opinion was changed in some respects, and the judgment was again (October 11) reversed. It was said that "the motion for rehearing is denied." Another motion for a rehearing was made. Some question is now raised by counsel for defendant in error as to the status of the first motion for a rehearing after the close of the term during which it was filed. That is not now of any importance. The case is still within the jurisdiction of the court, and it had the power, and has exercised it, to consider the case again in the light of both motions for rehearing and the briefs filed therewith, whatever the status of the first motion may be. This court has power, so long as its jurisdiction continues, to consider and reconsider its opinions and judgments, even if no motion for a rehearing is made. The second motion has now been considered, and the opinion has been partly rewritten in the light of the second motion and the elaborate briefs on the case. The court has at all times been duly impressed with the important issues involved in this case, and we have given consideration commensurate with that importance.

■ The act of the General Assembly approved March 10, 1933 (Ga. Laws 1933, p. 1025), amending an act approved August 3, 1927 (Ga. Laws 1927, p. 1283-1357), creating a new charter for the City of Macon, in so far as it purports to create a joint board of tax appeals for the city and county, is violative of art. 3, sec. 7, par. 8, of the constitution of Georgia (Civil Code (1910), § 6437) which provides: "No law or ordinance shall pass which refers to

more than one subject-matter, or contains matter different from what is expressed in the title thereof." The act, under a caption indicating only that the body of the act amended the charter of the City of Macon, also contained a provision establishing a joint board of tax appeals for the City of Macon and the County of Bibb, and provided that the expenses of the board should be paid jointly by the city and county. The portion of the act affecting the county was foreign to any matter mentioned in the caption, and was not germane to any matter pertaining to the municipality. It is well settled that under a caption to charter, or to amend an existing municipal charter, the General Assembly may include any matters "pertaining to the general subject." *Mayor &c. of Macon* v. *Hughes,* 110 *Ga.* 795 (36 S. E. 247) ; *Richardson* v. *Macon,* 132 *Ga.* 122 (63 S. E. 790). The scheme was to create a joint board to act for the entire county, including city, county, state, and other tax appeals. That part of this act amending the charter of the City of Macon, purporting to create a joint board of appeals for the city and county, is void. It was an order of the "joint board" that was disobeyed; it was disobedience to the "joint board" that the court held to be contempt. We are therefore dealing only with the act in so far as it purported to create a "joint board." Whether this ruling voids the other parts of the act, not connected with the joint board, is not involved in the question raised, and no ruling is made thereon.

■ The constitution of Georgia, art. 11, sec. 3, par. 1 (Civil Code (1910), § 6600), as amended, provides: "Whatever tribunal, or officers, may hereafter be created by the General Assembly for the transaction of county matters, shall be uniform throughout the State, and of the same name, jurisdiction, and remedies, except that the General Assembly may provide for the appointment of commissioners of roads and revenues in any county, and may abolish the office of county treasurer in any county, or fix the compensation of county treasurers, and such compensation may be fixed without regard to uniformity of such compensation in the various counties. And the General Assembly shall also have authority to consolidate the offices and duties of tax-receiver and tax-collector in any or all of the counties of the State, the official performing the duties of said two offices, when so consolidated, to be known as county tax-commissioner, and the General Assembly may prescribe the

compensation of such county tax-commissioner or authorize county authorities to fix the same, which compensation may be on the basis of fees or salary, and may be fixed without regard to uniformity in the various counties, and when such compensation is fixed on a salary basis the authority fixing the same shall determine what disposition shall be made of the fees and commissions accruing to each of said offices so consolidated, and provide for the levy and collection of a tax sufficient to pay the salary so fixed." 13 Park's Code Supp. 1926, § 6600. The act approved March 10, 1933 (Ga. Laws 1933, p. 269), undertakes to provide for a board of tax appeals having authority to hear appeals arising from city, county, and state tax returns or assessments.

It is argued that "The act in question is a general law having uniform operation throughout the State, in all counties coming within the class specified; the offices which it creates are therefore uniform throughout the State, although it does not exist in all the counties of the State." It is not necessary to decide whether, with reference to the constitution (Civil Code (1910), § 6391), this is a general act with local application; and we do not decide that question. With reference to the constitution (§ 6600) the act in question does not operate uniformly "throughout the State." This provision makes no exception in regard to a tribunal for tax appeals. The act limits its operation to counties having not less than 75,000 and not more than 100,000 inhabitants according to the last or any future census of the United States. The court must take cognizance of the fact that only one county, Bibb, in this State comes within the limitation imposed. Under this act Bibb County would be the only county having a board of tax appeals jointly with a municipality and by the name "Joint Board of Tax Appeals," and no other board would have the same jurisdiction.

There is good reason to construe the provision of the constitution found in § 6600 as being separate and distinct in its requirements from the other provision (§ 6391) prohibiting the passing of special laws where there was already an existing general law. If it was intended in these two sections to produce the same results, then no necessity existed for more than one section. The provisions of § 6600 are more nearly akin to those in § 6527 than § 6391. In *Cain* v. *State,* 166 *Ga.* 539 (144 S. E. 6), discussed hereinafter, this court refused to apply the same rule, as to classification by popula-

tion, which has frequently been applied in cases involving the constitution prohibiting special laws as stated in Code § 6391. Whatever the legislation enacted by the General Assembly with respect to the creation of tribunals or offices for the transaction of county matters, such tribunals or offices must be uniform throughout the State and must be of the same name, jurisdiction, and remedies. Any other view would obviously nullify the constitution upon this subject and set it completely at naught, according to the local changes of sentiment or political supremacy.

Whether or not either act offends art. 1, sec. 4, par. 1 (Civil Code (1910), § 6391), of the constitution, that "Laws of a general nature shall have uniform operation throughout the State, and no special law shall be enacted in any case for which provision has been made by an existing general law," is not decided. No ruling in any former case dealing with that provision of the constitution or its applicability to any statute is controlling in the decision now made. The judgment rendered does not affect any issues raised except those expressly stated.

So far as we are aware, there is no decision *precisely* on this question to be found in the Georgia Reports. The nearest are *Conley* v. *Poole,* 67 *Ga.* 254; *Law* v. *McCord,* 143 *Ga.* 822 (85 S. E. 1025); *Abbott* v. *Commissioners,* 160 *Ga.* 657 (129 S. E. 38); *McDaniel* v. *Thomas,* 162 *Ga.* 592 (133 S. E. 624); *Cain* v. *State,* supra; *Wages* v. *Morgan,* 174 *Ga.* 158 (162 S. E. 380). Our own examination discloses none other; and it is reasonably certain that if there had been any case directly in point on either side, able and distinguished counsel would have cited it in their brief for defendants in error. That brief cites no authority on that question, not even these cases. The *Abbott, McDaniel,* and *Cain* cases are cited in support of the first motion for rehearing. Other cases are cited in the second motion. The *Abbott* decision dealt with the constitutionality of an act placing a county official in counties having a population of 200,000 or more on a salary basis. This act did not create a county tribunal or officer. It related solely to the question of compensation. That office remained the same after the passage of the act. The *McDaniel* decision dealt with an act placing new and additional duties upon the tax-collector, and was based on the *Abbott* case. No new tribunal was created; no new office. Compare *Conley* v. *Poole,* 67 *Ga.* at p. 257. The opinions in both the

*Abbott* and the *McDaniel* cases were written by Mr. Presiding Justice Beck. In the *Abbott* case it was so clear that the act dealing with the salary of the tax-receiver did not impinge upon the section of the constitution requiring uniformity of tribunals and offices transacting county matters, that the question was in no way discussed. There was a mere statement in the opinion, "We will not discuss the remaining objections to the salary act" with respect to the contention that it violated the uniformity clause just mentioned. The court merely said, "We do not think these contentions are meritorious," etc. The *Abbott* case was cited in the *McDaniel* case. The *Conley* case was not cited in the *Abbott* or the *McDaniel* case, but the decisions in all three rested upon the same sound principle. The *Conley* case might well have been cited, but the reasoning of the Presiding Justice unerringly led to the same conclusion. That case dealt with the act of the General Assembly empowering the commissioners of Fulton County to organize a new justice-court district in the county. The constitutionality of the act was attacked on the ground that it was in conflict with the section now found in the Civil Code (1910), § 6600, with respect to the uniformity of tribunals or offices created by the General Assembly. The court upheld the constitutionality of the act, on the specific ground that "The conclusion is imperative that the words, commissioners of roads and revenue, were used by the framers of the constitution as naming the tribunal, and not restrictive of its powers when created." In that case the court proceeded upon the idea that uniformity of the offices of boards of commissioners of roads and revenue was required under the constitution, which was not the case, as will appear from the provisions of the constitution itself, and was noted, with reference to *Conley* v. *Poole,* in *County of Pulaski* v. *Thompson,* 83 *Ga.* 270, 275 (9 S. E. 1065). Uniformity of the tribunal or office must be maintained.

It should be noted at this point that an amendment to the constitution was considered essentially necessary to permit a variation in various counties in order to abolish the office of county treasurer and to consolidate the office of tax-receiver and tax-collector. Upon considering the case again, we are reinforced in the conclusion that the act in question, limiting its operations to one county, does violate the provisions of the constitution with respect to the requirements of uniformity in county tribunals and offices. Counsel for

the defendants in error contend that the view taken by the court in respect to the act now in question is in conflict with an "unbroken line of decisions" beginning with *Mathis* v. *Jones,* 84 *Ga.* 804 (11 S. E. 1018), and they cite a number of cases. The decision in *Mathis* v. *Jones* dealt with that portion of the constitution found in the Civil Code (1910), § 6391, and with no other provision. The classification there was not by population, but the act became operative by referendum. In the same case, *Mathis* v. *Jones,* Chief Justice Bleckley, speaking for the court, said: "The scheme of our present constitution is not only to have general statutes uniform in their operation throughout the State when they are enacted, but to have them remain so as long as they remain in force." That was said in a case dealing with the question of whether a statute was general. There is much more reason to hold in a case like this that the statutes must be "uniform in operation throughout the State when they are enacted." Under the act considered in that case, whenever the people of a county voted favorably thereto the act became operative in that county. There is substantial difference in a classification by population, which can not with any certainty be controlled, from one where the act becomes operative when a majority of voters declare for such operation. What counsel calls "the unbroken line of decisions" cited in their brief beginning with that case, with the exception of the *Abbott* and *McDaniel* cases, all dealt with the section of the constitution with respect to the enactment of special laws where there is an existing general law (§ 6391), or with provisions other than that found in § 6600. In so far as they do not deal with § 6600, obviously they do not conflict with the present decision. Classification by population, even as to § 6391, has not uniformly been upheld.

Among the cases falling under § 6391, cited by counsel, is *Mayor &c. of Danville* v. *Wilkinson County,* 166 *Ga.* 460 (143 S. E. 769). Counsel quotes a part of the opinion, as follows: "Larger cities than Atlanta have disappeared entirely. Many such might be named. Babylon may be mentioned as an example. It had a walled circumference of 55 miles lying upon both sides of the Euphrates river. St. Petersburg, now Leningrad, in a decade lost more population than Atlanta has ever had." To understand the language quoted it is necessary to observe the connection in which it was used. In the opinion it was said: "It could be argued that still other

towns might come within the terms of the act by losing population." Then followed the language which was used merely as illustrative of the argument of counsel. In reply to such argument the court said: "But viewing the act in question *as of the date of its passage,* we think the case is clearly within the principle ruled," and concluded by holding the act unconstitutional, being in conflict with the provision forbidding the enactment of special laws where provision has been made by an existing general law. Even if that decision had been rendered to the contrary, it would have afforded no conflict with the present decision. In *Worth County* v. *Crisp County,* 139 *Ga.* 117 (76 S. E. 747), dealing with an act with respect to the section of the constitution just mentioned, the court held the act unconstitutional on the ground "that the possibility of other counties having such population by any subsequent census is too remote to form a basis for a reasonable classification on the subject of territorial generality of the act."

Counsel for defendant in error, in their first motion for rehearing, call attention to the case of *Cain* v. *State,* (supra), as being "one exception" to their contention with respect to uniformity. That decision did not deal with either of the sections of the constitution discussed above. It involved the constitutionality of an act of the General Assembly which provides that juries in their verdicts upon "the trial of all cases upon the criminal side of the court, involving misdemeanors, in constitutional city courts," within certain classes according to population, "shall in their verdict prescribe the sentence or punishment to be inflicted upon the defendant, in which verdict may be imposed an alternative sentence," etc. The act was held void because of conflict with art. 6, sec. 9, par. 1, of the constitution (§ 6527), which provides for uniformity in the jurisdiction, powers, proceedings, and practice of all courts or officers invested with judicial powers, etc. The court held: "It is manifest that the act of 1927 does not purport to be applicable throughout the State, but it is applicable only in certain cities and counties on the basis of population. It is insisted that the act of 1927 is not violative of the constitution, and is a valid law, under the principle of classification based on population. That principle is generally applicable where there is a reasonable relation between the subject of legislation and population, but not where there is no such reasonable relation." It was held that "Population is not a

proper basis for classification, as attempted" in that case. The case was distinguished from *Abbott* v. *Commissioners, supra,* in the same way that we have now distinguished it from the present case, that is, that the *Abbott* case "involved the amount of compensation which should be paid to a tax-receiver, and concerning which population, in the opinion of a majority of the court, had a reasonable relation; and that decision is not in conflict with the ruling here made." Similarly we hold in this case that "population is not a proper basis for classification, as attempted" by the act approved March 10, 1933 (Ga. Laws 1933, p. 269).

In *Law* v. *McCord, supra,* an act to provide for the establishment of children's courts as branches of the superior courts was held unconstitutional, because violative of art. 6, sec. 9, par. 1, of the constitution (§ 6527), which provides for uniformity of the jurisdiction, powers, proceedings, and practice of the courts. That same section was involved as in the *Cain* case, supra. The same argument was made in that case as in this. The court, speaking of the applicability of the section of the constitution with reference to special laws where there is a provision made by general law (§ 6391), said: "Relatively to that section there may be legitimate classification, but this does not authorize a violation of the other section of the constitution providing for uniformity in courts of the same grade." The court again declared an act intended to be general in its terms, but with local application, invalid in *Wages* v. *Morgan, supra.* The act made it mandatory upon the judge of the superior court in each county having a population of less than sixty thousand to designate an existing court of record to act and be known as the juvenile court of such county. This court held that act to be violative of par. 1 of sec. 9 of art. 6 of the constitution (§ 6527). This decision was in accord with and based upon *Law* v. *McCord, supra. Cain* v. *State, Law* v. *McCord,* and *Wages* v. *Morgan* were unanimous decisions of this court. Those cases are ample authority for this decision.

Among other cases cited in the second motion for rehearing are *Crawley* v. *State,* 150 *Ga.* 85 (102 S. E. 898), dealing with an act, "creating the office of commissioner of roads and revenues;" *McFarlin* v. *Board of Drainage Commissioners,* 153 *Ga.* 766 (113 S. E. 447), making the treasurer of the county ex-officio treasurer of the drainage commission, thus making the person holding the office

of county treasurer also hold the office of treasurer of the drainage commission; *Olliff* v. *Hendrix,* 172 *Ga.* 497 (158 S. E. 11), dealing with the provision as to who "shall not vote in the election for county school superintendent," as provided in the code of school laws, § 147 (Ga. Laws 1919, p. 349). Neither of these acts contains a classification by population, nor do they conflict with the decision here rendered. It is not necessary nor do we mention all citations made throughout the course of study of this case. Those already mentioned are deemed sufficient to justify the conclusion reached. Clearly the statute now under consideration violates the constitution, art. 11, sec. 3, par. 1 (§ 6600). There is no reasonable relation between population and the subject-matter of the legislation.

■ It is now insisted, on motion for rehearing, that the act creating the joint city and county board is authorized by the constitutional amendment submitted and ratified in 1924, authorizing the "consolidation of city and county governments." Ga. Laws 1924, p. 811. That amendment contains the following: "Provided, however, that the people within the corporate limits of municipalities affected and the people of the county affected outside of the corporate limits shall vote separately; and before the act shall go in effect a majority of those voting in the municipalities separately, if more than one municipality is affected, and a majority of those voting outside of said municipality or municipalities shall vote in favor of said act." There was enacted by the General Assembly of Georgia of 1933 an act to consolidate the City of Macon and Bibb County, with appropriate referendum. That act is in no way connected with either of the acts the constitutionality of which is being contested in this case. Ga. Laws 1933, p. 1010-1025. The acts now being dealt with do not contain any provision for a referendum, as required by the constitution.

■ Toole and others, who were adjudged guilty of contempt, and punished under the provisions of the act for failure to produce official documents to be used as evidence by the "joint board of tax appeals," had such an interest in the act creating the board as will afford them the right to contest the constitutionality of the act. The following cases have been cited as contrary to the ruling here made. *Plumb* v. *Christie,* 103 *Ga.* 686 (30 S. E. 759, 42 L. R. A. 181); *Eliopolo* v. *Stubbs,* 143 *Ga.* 602, 606 (85 S. E. 853); *Felton*

v. *Bennett,* 163 *Ga.* 849 (137 S. E. 264). Upon examination it is held that those cases present no conflict.

■ The rulings above stated control the case and require a reversal of the judgment. None of the other issues as to the validity of either act above mentioned need be decided. The concluding paragraph in the opinion of Chief Justice Bleckley in *Mathis* v. *Jones,* supra, we deem particularly pertinent, as follows: "In view of the large mass of existing legislation which will probably be affected by the principle on which we decide this small case, we are profoundly sensible of the wide and possibly the grave consequences to whole communities which the decision involves. We have not reached our conclusion without long deliberation and much reluctance; but the constitution, which is the supreme law for us as well as for the General Assembly, declares that 'Legislative acts in violation of this constitution, or the constitution of the United States, are void, and the judiciary shall so declare them.' In obedience to this high behest, we discharge the solemn duty which we are commanded to perform."

*Judgment reversed. Rehearing denied. All the Justices concur.*