FREENEY, treasurer, *v.* PAPÉ.

**4**

No. 11809.   November 10, 1937.

James C. Estes, for plaintiff in error.   Park & Strozier, contra.

Jenkins, Justice.   Paragraph 1 of the ruling in the syllabus, dealing with the attack on the statute creating county probation officers as being violative of art. 11, sec. 3, par. 1, of the constitution (Code, § 2-8401), may properly be elaborated.   This paragraph of the constitution is as follows: "Whatever tribunal, or officers, may hereafter be created by the General Assembly for the

transaction of county matters, shall be uniform throughout the State, and of the same name, jurisdiction, and remedies," save as to certain named exceptions not relevant to a determination of this case. Does the act of 1913 (Ga. L. 1913, p. 112; Code, § 27-2703), which provides for the appointment by the judge of the superior court of any county in the State of a county probation officer, upon the recommendation of the grand jury of such county, violate the above-quoted provision of the constitution? Assuming, but not here deciding, that such a county probation officer comes within the provisions of the quoted section of the constitution, as being an officer for the transaction of "county matters," we still do not think that the requirement that, before the judge shall have power and shall be required to appoint, the grand jury must have first given local application to the law by their recommendation of such appointment, destroys the State-wide uniformity of the office. Such a required grand jury recommendation certainly can not be taken to destroy uniformity as to "name, jurisdiction, and remedies," as is required by the constitution. Does such a required recommendation destroy uniformity in some other sense not therein expressed or defined? If the words uniformity and unanimity or universality throughout the different counties of the State be accounted as identical in meaning, such might be the case, but not otherwise. The question therefore resolves itself into whether the constitution not only requires that all probation officers shall be uniform throughout the different counties of the State in "name, jurisdiction, and remedies," but also requires, in order for the office to be uniform, that it be put in universal operation throughout the State.

As was said in *Toole* v. *Anderson*, 177 *Ga.* 814 (171 S. E. 714), the quoted paragraph of the constitution, with which we are dealing and which requires that all "officers . . for the transaction of county matters" shall be "uniform" and "of the same name, jurisdiction, and remedies," is not identical in meaning or scope with the somewhat similar constitutional provision, art. 1, sec. 4, par. 1 (Code, § 2-401), which requires that all "laws of a general nature shall have uniform operation throughout the State." ·The two provisions of the constitution, while akin, must not be confused. It would seem, however, that a proper interpretation of the section last mentioned may aid in answering the question

relative to the other provision now being considered. It would seem that while art. 11, sec. 3, par. 1, with reference to uniform officers, which is now under consideration, includes or superimposes art. 1, sec. 4, par. 1, with reference to uniform laws, the converse is not the case. In other words, while every general law shall have uniform operation, not even a general law of uniform operation (but with local application) can so operate as to create different sorts of officers for the transaction of county matters, for the reason that all such officers, even though created by a general law with local application, must be designated by the same name and must have conferred upon them the same jurisdiction and remedies. Since, as indicated, it is manifest that the act of 1913 does not operate to make any county probation officer different from any other such officer in name, jurisdiction, or remedies, and since the sole remaining question is whether such officers as thus created and put into effect are "uniform throughout the State," a construction of the less comprehensive art. 1, sec. 4, par. 1, providing that all "laws of a general nature shall have uniform operation throughout the State," may go far to determine our question for us. In *Mathis* v. *Jones*, 84 *Ga.* 804, 807 (11 S. E. 1018), Judge Bleckley, speaking for the court, said: "The constitution of 1877 (art. 1, sec. 4) declares: ' Laws of a general nature shall have uniform operation throughout the State, and no special law shall be enacted in any case for which provision has been made by an existing general law.' The law embraced in the Code of 1882 for the exercise of local option as to fences, is a general law having *uniform operation throughout the State* [italics supplied], notwithstanding it embodies the option principle to be exercised locally and separately by each county or each militia district. We think the sounder view, and the one which must finally prevail, is that laws of this character are rightly classified as general and as having uniform operation." Following the line of reasoning in the *Mathis* case, although it dealt with the other constitutional provision referred to, there would seem to be no question that if the probation officers provided for by the act of 1913 are designated by the same name, with the same jurisdiction and remedies, the mere fact that the law embodies what Judge Bleckley speaks of as the "option principle" does not prevent the law from being classified as general and as having

"uniform operation throughout the State," nor, under the same reasoning, does it prevent the officers from being "uniform throughout the State" wherever put in operation upon the recommendation of the grand jury. In the *Toole* case, supra, the act there under consideration was attacked, not under art. 1, sec. 4, par. 1, as in the *Mathis* case, but under the same constitutional provision which we are here considering. With that the analogy ends. In the *Toole* case, the act declared unconstitutional provided for the creation in counties having a population between 75 and 100 thousand of a joint board of tax appeals, operating in all matters of tax appeals within such counties, whether pertaining to county or city assessments. The act undertook to set up for counties of the designated population a new system of tax-assessment appeals different from that existing in other counties, and an entirely new and different officer to administer the same. This court, withholding determination in that case as to whether the act violated art. 1, sec. 4, par. 1, ruled that it did violate art. 11, sec. 3, par. 1, the provision now under consideration. The fact that in many cases a population standard has been held to conform to art. 1, sec. 4, par. 1, as being a general *law* with local application (*Bone* v. *State*, 86 *Ga.* 108 (2), 12 S. E. 205; *Starnes* v. *Mutual Loan & Banking Co.*, 102 *Ga.* 597, 600 (3), 29 S. E. 452; *Abbott* v. *Commissioners of Fulton County*, 160 *Ga.* 657, 661, 129 S. E. 38, and cit.), while in the *Toole* case the population standard was held not to prevent the statute from violating the provisions of art. 11, sec. 3, par. 1, requiring *officers* to be uniform in name, jurisdiction, and remedies, uncovers the whole difficulty. In the *Toole* case, the court, while stating that "there is substantial difference in a classification by population, which can not with any certainty be controlled, from one where the act becomes operative when a majority of voters declare for such operation," went on, however, to use the following language, strongly relied on by the plaintiff in error: "Whatever the legislation enacted by the General Assembly with respect to the creation of tribunals or offices for the transaction of county matters, such tribunals or offices must be uniform throughout the State and must be of the same name, jurisdiction, and remedies. Any other view would obviously nullify the constitution upon this subject and set it completely at naught, according to the local changes of sentiment or political supremacy."

8

(177 *Ga.* 820, 822.) Thus the court, while in fact dealing with a population standard, intimated, and we think correctly, that even if the statute had provided the optional principle, which it did not, instead of the population standard, which it did, and by which it was sought to give local application to a general law, even then the uniformity of officers *would* have been destroyed, with the result that such an attempt would have been invalid. The reason for the correctness of this assumption seems apparent. The statute considered in the *Toole* case provided an entirely different scheme, an entirely different official, in counties of a designated population, for passing upon tax-assessment appeals, from those applied in other counties throughout the State. It follows, therefore, that even if the statute considered in that case had in fact contained the "option principle," those counties which might choose to exercise it would thereby be departing from the general uniform system governing tax-assessment appeals, and would be setting up a new and distinct sort of officer to administer it, thus breaking the uniformity in name, jurisdiction, and remedies of such offices throughout the State. Here this is not the case. The option principle vested in the respective grand juries provides for no break in the uniformity of county probation officers. The only option consists in whether or not the respective counties will provide for themselves the only sort of uniform county probation officer which it is possible for any county to have. In *Butler* v. *Pape,* 183 *Ga.* 599, 604 (supra), it was held that an act was unconstitutional which "attempts to provide probation officers for counties having between 75,000 and 100,000 inhabitants, *different from the provisions relating to probation officers in other counties of Georgia.*" (Italics supplied.) The vice in that act, just as in the act dealt with in *Toole* v. *Anderson,* lay in part in the fact that its application would destroy the uniformity in the provisions relating to county probation officers between the different counties of the State. In the instant case, contrary to the facts in both the *Toole* and the *Butler* cases, a classification of counties merely by population is not involved; nor does it appear in this case, as it did in each of those, that the application of the statute would result in the establishment of county officers dealing with the same subject-matters, but operative under different provisions of law such as would destroy

their uniformity. This, under the provisions of art. 11, sec. 3, par. 1, is not permissible. But where, as here, whenever in any county the act of the General Assembly is put in operation by the recommendation of the grand jury and the appointment of the judge, the office comes from a common mold, and conforms throughout the State with every like office in every other county. The offices conform to the same pattern, for the reason that they are created by the one authoritative act of the General Assembly, which makes not the least distinction in uniformity, name, jurisdiction, and remedies in any county the grand jury of which desires to exercise its "option principle."

*Judgment reversed. All the Justices concur.*