## HAWKINSVILLE & FLORIDA SOUTHERN RAILWAY CO. *v.* WAYCROSS AIR-LINE RAILROAD CO.

</div>

1. Construing together all the provisions of the constitution of this State, as it stood prior to 1892, with reference to the granting of charters to railroad companies, the passage of what is known as the general railroad law for the incorporation of railroad companies did not deprive the General Assembly of the power to thereafter grant special charters to such companies, upon the ground that so doing would be enacting special laws in cases already provided for by an existing general law.

2. Even if section 2176 of the Civil Code is in any case restrictive of the powers of a railroad company chartered by a special act of the General Assembly, it has application only when the two railroad companies involved connect by their lines the same terminal points.

<div align="center">

Argued November 4, — Decided November 16, 1901.

</div>

Petition for injunction.   Before Judge Roberts.   Irwin superior court.   September 11, 1901.

*Ellis & Ellis* and *Candler & Thomson*, for plaintiff, cited, (1) as to the power of the General Assembly to grant a special charter to the defendant: Civil Code, § 5732; Acts 1880–1, p. 156; *Maxwell* v. *Tumlin*, 79 *Ga.* 570; *Mathis* v. *Jones*, 84 *Ga.* 804; *Mattox* v. *Knox*, 96 *Ga.* 403; *Sasser* v. *Martin*, 101 *Ga.* 452, 453, 454; *Caldwell* v. *State*, Id. 557; *Papworth* v. *State*, 103 *Ga.* 36; *Bagley* v. *State*, Id. 388; *Aycock* v. *Rutledge*, 104 *Ga.* 533; *Union Savings Bank* v. *Dottenheim*, 107 *Ga.* 618; *Benning* v. *Smith*, 108 *Ga.*

259; *Jones* v. *McCaskill*, 112 *Ga.* 453. (2) As to the building of a railroad within ten miles of another railroad: Acts 1895, p. 60, Civil Code, § 2176; Acts 1880–1, p. 166, Code of 1882, § 1689 (t); *Macon & Atlantic R. Co.* v. *Macon & Dublin R. Co.*, 86 *Ga.* 83; *Augusta & Savannah R. Co.* v. *Augusta Southern R. Co.*, 96 *Ga.* 562; *Georgia Nor. R. Co.* v. *Tifton, T. & G. R. Co.*, 109 *Ga.* 762. *J. L. Sweat*, for defendant, cited, as to the constitutional question: *Dieter* v. *Estill*, 95 *Ga.* 370; *Gunn* v. *Central Railroad*, 74 *Ga.* 509; and as to the second question dealt with, the authorities cited by counsel for plaintiff thereon.

SIMMONS, C. J. In 1887 the legislature incorporated the Waycross Air-Line Railroad Company, and amended the charter in 1889 and 1891. Prior to that time the legislature had passed what is commonly known as a "general law" for the incorporation of railroad companies. This law was amended from time to time, and finally was placed in the Code of 1895. In 1896 the Hawkinsville and Florida Southern Railroad Company was incorporated under this general law. In speaking of these two corporations in this opinion they will hereafter be designated as the "Waycross" company and the "Hawkinsville" company. The Waycross company was given by the General Assembly very broad powers in selecting its route, and the original charter and the amendments thereto designated several places to which the road might be built. The company finally determined to build from Waycross, in Ware county, to Cordele, in Dooly county. The charter of the Hawkinsville company authorized it to build from Worth, in Worth county, to Pitts, in Wilcox county, and also to build a branch road from some point on its main line to the city of Fitzgerald. Davisville was selected as the point on the main line, making the proposed branch to Fitzgerald run almost at right angles to the main line. By an amendment to the charter the company was also authorized to extend its main line from Pitts to Hawkinsville. The original main line and the extension to Hawkinsville were built, so that the main line now runs from Worth to Hawkinsville. The branch from Davisville was built about ten miles out toward Fitzgerald, but has never been completed to Fitzgerald. The Waycross company had completed its road from Waycross to Fitzgerald, and, desiring to extend it to Cordele, cut timber and made grades along the proposed route. This route came within ten miles of the Hawkins-

ville company's branch road. The Hawkinsville company thereupon filed an equitable petition against the Waycross company to enjoin it from building its proposed road. The petition alleged that the Waycross company had no valid charter which would authorize it to condemn land for its right of way or to cut timber, and that it was therefore a trespasser when it undertook to cut timber belonging to the plaintiff. It also alleged that under the Civil Code, § 2176, the defendant was forbidden, even if it had a valid charter, to run its road parallel with that of the plaintiff and within less than ten miles of it. There were other points made in the petition, but these are the main and controlling ones. The defendant demurred to the petition, and also filed an answer. The court, after hearing argument, refused the injunction, and the plaintiff excepted. The court decided that the Waycross company had a valid charter, and that section 2176 of the Civil Code did not apply, under the facts of the case.

1. It was contended by the able and learned counsel for the plaintiff in error that the court was wrong in holding that the charter of the Waycross company was valid. He contended that, as in 1881 the legislature had passed a general law for the incorporation of all railroads in the State, and as paragraph 1, section 4 of the bill of rights (article 1 of the constitution) declares that "Laws of a general nature shall have uniform operation throughout the State, and no special law shall be enacted in any case for which provision has been made by an existing general law," the legislature had no power to pass a special act incorporating the Waycross company or to pass acts amending its charter. He cites many decisions of this court in which it has been held that, where the legislature has enacted a general law upon a particular subject, it can not afterwards pass a special law upon the same subject, and that acts attempting to do so are unconstitutional and void. We entertain no doubt of the correctness of the rulings relied upon by counsel; but these decisions were made with reference to special acts passed in direct conflict with that part of the constitution above cited. When the legislature passed a general law as to the manner of working public roads, as to fences, or as to the sale of liquor, it exhausted its power, and could not pass special road, fence, or liquor laws for particular localities, without first repealing the general law. The constitution is as binding upon the legislature as upon the courts; but when the

constitution gives to the legislature special power to incorporate railroad companies, we think that, although it may have passed a general law for the incorporation of railroad companies, its power to grant special charters to such companies was not, under the constitution as it existed from 1877 to 1892, thereby exhausted. Many applications for railroad charters were made to the legislature at each session, and, in order to save time and expense, it passed a general law for the incorporation of railroad companies, and by so doing said to the public: "We tender you this law, which you can accept or not at your pleasure ; a charter obtained thereunder will be as valid and binding as though granted by a special act of this body." In our opinion, if persons interested did not desire a charter under the general law, but desired privileges and immunities different from those granted under the general law, they could apply to the legislature, and it could not constitutionally refuse to act upon the application because of the passage of the general law. The enactment of the general law did not divest the legislature of the power which the constitution had given. The constitution of 1877 declared that "The General Assembly shall have no power to grant corporate powers and privileges to private companies, except banking, insurance, railroad, [etc.] companies." Art. 3, sec. 7, par. 18. It was clearly the meaning and intention of the framers of the constitution to give the legislature the power to grant charters to railroad companies. While the constitution restrained the legislature generally from passing special laws after having enacted a general law covering the particular matter, it still reserved to the legislature the right to grant special charters to these companies.

Construing the two sections together we are of opinion that the legislature had the right, after having passed a general law for the incorporation of railroad companies, to enact a special law incorporating a particular railroad company. This seems to have been the contemporaneous construction put upon these sections by every legislature which has met in Georgia from 1881, when the general railroad law was passed, down to 1892, when a constitutional amendment was passed taking from the legislature the power to grant special charters. As far as we are informed, no Governor during this period ever refused to approve a railroad charter on the ground that the legislature had no power to pass it. The books containing the laws of the State from 1881 to 1892 are full of

charters granted by the legislature to railroad companies. While contemporaneous construction by the members of the legislature is not and should not be controlling with the courts, it is entitled to great weight upon constitutional questions, especially when we know that some of our ablest lawyers were members of the legislature when these charters were granted. See upon this subject *County of Pulaski* v. *Thompson*, 83 *Ga.* 270; *Fullington* v. *Williams*, 98 *Ga.* 813. Besides this contemporaneous construction by the legislature, we have a constitutional amendment in which the power of the legislature to grant charters to railroad companies is expressly recognized. In December, 1890, the legislature proposed this amendment in an act the title of which was as follows: "An act to amend article 3, section 7, paragraph 7, of the constitution of the State, by adding thereto the following words: 'But the first and second reading of each local bill, and bank and railroad charters, in each house, shall consist of the reading of the title only, unless said bill is ordered to be engrossed.'" This was passed by a constitutional majority, submitted to the people of the State, and by them ratified at the general election in 1892. It is now a part of the constitution of the State and can be found therein. Civil Code, § 5770. This is not only a legislative construction but a construction by the people of the State; for this amendment expressly recognized the right of the legislature in 1890 to grant railroad charters. This to our minds is conclusive of the fact that the legislature had power to grant railroad charters after the passage of the general law of 1881. It is true that in 1891 the legislature submitted to the people a constitutional amendment revoking this power, and that in 1892 this amendment was ratified by the people; but that does not, in our opinion, change the construction put upon the power of the legislature to grant railroad charters. What we have said in this opinion applies, of course, to the constitution as it stood prior to the ratification of the last-mentioned amendment revoking the power of the legislature to grant special railroad charters. The very fact that the legislature proposed the amendment to the constitution which revoked the power to grant special charters to railroad companies, and that it was adopted by the people, is also conclusive, to our minds, that the legislature and the people construed the constitution as we have done. If, after the passage of the act of 1881, the legislature did not have this power,

the two amendments just referred to would have been superfluous and nugatory; for both of them recognized the previous power of the legislature to grant such charters, when, under the contentions of the plaintiff in error, it had already deprived itself of the power of so doing.   Courts will not presume that the people in their sovereign capacity would do a foolish and unnecessary thing.

2.   It was contended by the counsel for the plaintiff in error that, even if the Waycross company had a valid charter, it was forbidden by the Civil Code, § 2176, from running its line within ten miles of the branch road from Davisville to Fitzgerald; that the record discloses that the Hawkinsville company had built ten miles from Davisville in the direction of Fitzgerald, and that the proposed extension of the Waycross road would parallel this branch line and be within ten miles of it, and that the proposed extension was laid out so close to the Hawkinsville line as to be almost upon its right of way.   We agree with the trial judge that, under the facts of this case, section 2176 is inapplicable.   In our opinion that section applies only when the termini of the two roads are the same.   For instance, if both roads had charters from Waycross to Cordele, the road last built or proposed to be built could not run within ten miles of the road already built or with the route already "selected and chartered," save in the exceptional cases provided for in the section.   Here, however, the termini of the two main roads were entirely different and widely separated.   The southern terminus of the Hawkinsville company's main road is at Worth, in Worth county, and the other terminus is Hawkinsville, in Pulaski county. The Waycross road runs from Waycross, in the county of Ware, about a hundred miles from Worth, to Cordele, in Dooly county, and fully thirty miles from Hawkinsville.   The general direction of the Hawkinsville road is north and south, and that of the Way-cross road is east and west, the two main lines crossing each other nearly at right angles.   Under the charter of the Hawkinsville company, it had authority to build a branch from Davisville, on its main line, to Fitzgerald, which would be a branch fifteen or twenty miles in length.   The Waycross road was already built to Fitzgerald, and the proposed extension of the main line would nearly parallel the branch of the Hawkinsville road and be within ten miles of it.   It could not have been the intention of the legislature to compel the Waycross company to deflect its main line so

.as not to come within ten miles of the branch road. If both companies were, under proper charter authority, building branch roads between Davisville and Fitzgerald, this section might apply, but it ·does not render it necessary to deflect a main through line so as not ·to come within ten miles of a branch road one of whose termini ·was on the main line of the other road and the other of whose ·termini was neither a terminus of such other road nor on its line. Fitzgerald is the proposed terminus of the branch from Davisville. Davisville is not on the line of the Waycross road. Fitzgerald is ·on such road, and is the only point common to that road and the main or branch line of the Hawkinsville company. For these reasons section 2176 is inapplicable to the present facts, even if it in ·any case applies to a company chartered by a special act of the legislature.

Counsel for the plaintiff in error argued with great ability and much learning upon the subject of de facto corporations. In much ·of what he said we fully concur; but, as the Waycross company was a de jure and not a de facto corporation, we have not gone into that question, and find it unnecessary to review the case of *Georgia R. Co.* v. *Trust Co.*, 94 *Ga.* 306.

            *Judgment affirmed. All the Justices concurring.*