GREEN, administrator, *v.* FREEMAN.

1. No note or memorandum in writing is necessary to charge either the administrator or purchaser at any administrator's sale.
2. Where, upon an interlocutory hearing of an equitable petition for injunction, the judge, after hearing argument of counsel, announces that he will grant the interlocutory restraining order, but that for the purpose of making certain rulings on evidence offered he will pass the case until two days later, it is not error for him to refuse to receive and consider other affidavits tendered by the defendant on the day set for announcing such rulings, no reason being shown for not submitting the rejected affidavits at the hearing.
3. The court below did not err in repelling the affidavit upon the exclusion of which error is assigned.

4. The granting or refusing of interlocutory injunctions where the evidence is conflicting is a matter of sound discretion intrusted to the judges of the superior court to be exercised by them according to the circumstances of each case; and such discretion will not be controlled by this court, unless manifestly abused.

Argued February 6,—Decided August 17, 1906.

Injunction. Before Judge Roan. DeKalb superior court. January 1, 1906.

*Green, Tilson & McKinney,* for plaintiff in error

*Etheridge, Boykin & Etheridge,* contra.

BECK, J. Freeman sought to enjoin Green, an administrator, from selling certain described land belonging to the estate of the latter's intestate. It was alleged in the petition for injunction, that the administrator had sold the property to plaintiff at a regular administrator's sale for the sum of $3,625.00, plaintiff being the highest and best bidder; that the sale was acquiesced in by the administrator at the time and for several weeks subsequent thereto, but upon Green's discovering that petitioner could sell the land at a profit, he refused to make plaintiff a deed (although the money had been tendered him by plaintiff), and advertised the land for another sale. The defendant admitted in his answer that Freeman had bid the amount named for the land, but averred that he did so only as a "by-bidder" or "puffer" for the estate, and with no intention of purchasing the property; or if he had such intention, it was in furtherance of a fraudulent scheme, for he had promised the administrator to bid the property up to the sum of $3,500 and there stop, in order to help the sale of the land; and it was known to other bidders present that Freeman was to act as a by-bidder, and that he was instructed not to go over the sum of $3,500, but when he did exceed that amount the bona-fide bidders became disgusted and refused to participate in the sale. When the bid of $3,625 was made, defendant asked petitioner to whom must 'the property be "knocked down," whereupon petitioner replied, "To me, for the present." Defendant did not discover until some time after the sale that several bona fide bidders were prevented from further participating in the sale by the misconduct of the plaintiff, and "defendant charges that all the facts of this transaction, at the time of said sale and subsequent thereto, show that said Freeman had no intention of making any bona fide bid at said

sale, but that his intention was to find a purchaser for said prop-·
erty at a profit, and then seek to have the administrator convey
him the property, and pay for the same out of the proceeds of said
sale, and, if no purchaser could be found, to let the matter drop,.
and never call for a deed; that having found a purchaser, he then
sought to carry out his scheme, and thus perpetrate a fraud upon
said estate." Upon the trial of the case a great number of affida-
vits were introduced in support of the contentions of each party.
The judge granted a temporary restraining order, and the defend-
ant excepted. He also complained of the refusal of the judge to·
allow in evidence certain affidavits tendered to the court on Janu-·
ary 1st under the following circumstances: "At the conclusion
of the evidence at the hearing on the 30th of December, 1905, and
after argument, the court announced that he would grant a tem-·
porary restraining order, but, for the purpose of making rulings
on the evidence offered and the objections thereto, would pass the·
case until the first day of January, 1906, and [on January 1st,
1906] . . the defendant tendered in evidence the following·
affidavit, which was ruled out by the court on the ground that it..
came too late, as he had closed the case on the previous Saturday,.
except for the purpose of hearing objection to the evidence and of
receiving one more affidavit from the defendant, which has already
been set out in the foregoing evidence." Defendant also excepted
to the court's excluding an affidavit of the widow of his intestate,.
to the effect that plaintiff had repeatedly threatened her with ruin-
ing the sale of the property contended for if she would not urge the·
administrator to make plaintiff a deed; "that said Freeman had
stated that unless he did make the deed, he, Freeman, would get up·
at the next sale, if the administrator advertised the place for sale·
again, and state to the public that he, Freeman, had bought the
place, and that if anybody else bought it they would buy a lawsuit."
Defendant further excepted to the court's not sustaining his de-
murrer to the petition.

1. One of the points urged by the administrator in his argument.
before us was, that, as the evidence adduced upon the hearing dis-·
closed that there had been no memorandum in writing made of the·
purchaser and price at the time of the alleged sale to the plaintiff,.
the sale was within the statute of frauds, and therefore void. But
we can not give our assent to this proposition. An administrator's.

sale of lands belonging to the estate of his intestate can not be properly termed a contract for the sale of lands, or any interest in or concerning them. The exposure of the property for sale is a mere ministerial act in compliance with an order or judgment of a court of competent jurisdiction; and when in obedience to such judgment the land is "put up" for sale and "knocked off" to one bidding therefor, the purchaser is liable for the amount of the purchase-money as soon as the hammer falls. "Any person who may become the purchaser of any real or personal estate at any sale which may be made at public outcry by any executor, administrator, or guardian, or by any sheriff or other officer under and by virtue of any execution or other legal process, and shall fail or refuse to comply with the terms of such sale when requested so to do, shall be liable for the amount of such purchase-money, and it shall be at the option of such sheriff or other officer, either to proceed against such purchaser for the full amount of the purchase-money, or to resell such real or personal estate and then proceed against the first purchaser for the deficiency arising from such sale." Civil Code, § 5466. No memorandum in writing is necessary to charge the purchaser under the provisions of this section. The offer, the bid, its acceptance indicated by "knocking off" the property to the person bidding, makes a contract binding upon the purchaser. Can we ascribe to the lawmaking power the purpose of making a given state of facts binding upon one party to a sale and not upon the other, when the former stands ready to perform all that is necessary to complete the purchase, to wit, the payment of the purchase-money? This should not be done, especially in view of the fact that up to the moment the property is knocked off to the highest and best bidder, should the bids all be too low or the best interests of the estate be jeopardized, the administrator may withdraw the property, and those who have been bidding will not be heard to complain or to insist that inasmuch as the property had been put up at public outcry the sale should be completed. In the case of *Bean* v. *Kirkpatrick,* 105 *Ga.* 476, it was decided that "It is the right and duty of an administrator who is conducting a public sale of property belonging to the estate of his intestate to withdraw the same from sale when it is manifest that the property is about to be sacrificed at a grossly inadequate price." And again: "When land appraised at $2,000 was exposed to sale by an admin-

istrator and the highest bid therefor was only $151, this court will not interfere with the discretion of the trial judge in refusing to enjoin the administrator from again advertising and offering the property for sale, it appearing from the record that at the interlocutory hearing the evidence was decidedly conflicting upon the question whether the property had been actually knocked off to the person making such bid, or had been withdrawn from sale." While the question was not decided in that case, still it is very strongly intimated that if the evidence had shown conclusively that the property had been knocked off, the trial judge should have enjoined the administrator from again advertising and offering the property for sale. See also the case of *Tillman* v. *Duncan,* 114 *Ga.* 244, where a similar intimation is found in these words: "It is the right of an executor offering land for sale at public outcry to withdraw the same at any time before the hammer falls." In the case of *Mallard* v. *Curran,* 123 *Ga.* 872, while the precise question raised in the case at bar was not made, we can infer from the record that no memorandum was made; and it was there held that the administrator was bound at the moment in which the property was knocked off; it was also broadly held that the contract of purchase and sale was completed upon the fall of the hammer, and that either party might then enforce performance by the other.

We have not thought it necessary to discuss the question as to whether an administrator's sale might be held to be a judicial sale, and a memorandum in writing dispensed with under the Civil Code, § 5448; but we may remark that in this State the term "judicial sale" is used to denote more than what is known in the text-books as such. *Seymour* v. *National B. & L. Asso.,* 116 *Ga.* 285. And it has been held that a sale by an administrator or executor under an order by the court of ordinary is in the nature of a judicial sale. *Harwell* v. *Fosler,* 102 *Ga.* 38. See also 18 Cyc. 820. But whether an administrator's sale can be classed with judicial sales or not, we hold, for the reasons stated, that no note or memorandum in writing is necessary to charge either the administrator or the purchaser at any administrator's sale.

2-4. The second, third, and fourth headnotes rule the other questions raised in the case.

*Judgment affirmed. All the Justices concur, except Fish, C. J., absent.*