## MORRISON *et al. v.* COOK, Secretary of State.

1. The act of August 11, 1915 (Acts 1915, p. 18), is not violative of art. 3, sec. 7, par. 8, of the constitution of this State (Civil Code, § 6437), which provides: "No law or ordinance shall pass which refers to more than one subject-matter, or contains matter different from what is expressed in the title thereof."
2. When the act of 1915, just mentioned, is considered in its entirety, in the light of the history of its passage as disclosed by the admissions in the pleadings in this case, it sufficiently appears that the act is applicable to the proposed application for charter which is the subject-matter of the suit.
3. The act of December 17, 1892 (Acts 1892, p. 37), the purpose of which was to carry into effect an amendment to the constitution of this State (art. 3, sec. 7, par. 18; Civil Code, § 6446), relating to the incorporation of railroad companies, is a general law within the meaning of art. 1, sec. 4, par. 1, of the constitution (Civil Code, § 6391), which declares, in part: "Laws of a general nature shall have uniform operation throughout the State, and no special law shall be enacted in any case for which provision has been made by an existing general law." The act of 1915 (supra), purporting to amend the act of 1892, is a special enactment having reference to a matter for which the existing general law provided; and is void as violative of the provision of the constitution above quoted.
4. It was erroneous to refuse the mandamus absolute.

FEBRUARY 24, 1917.

Petition for mandamus. Before Judge Pendleton. Fulton superior court. January 31, 1916.

Application was duly made to the Secretary of State, under the Civil Code, §§ 2577-2597, for charter of a corporation to be called North Georgia Mineral Railroad Company. The proposed route of the railroad extended from Atlanta in a northwest direction, a distance of about fifty miles, to a place called "Warford Crossroads," near the town of Cartersville in Bartow County, Georgia. The Western and Atlantic Railroad, owned by the State of Georgia, extends from Chattanooga, Tenn., via Cartersville, to Atlanta, Ga. This property was under lease, soon to expire, to the Louisville &

Nashville Railroad Co., a foreign corporation. The latter company owned a railroad extending from Knoxville, Tenn., to Cartersville, Ga., where there was physical connection between its tracks and the tracks of the Western & Atlantic Railroad, and thence the L. & N. Railroad was accustomed to run its trains to Atlanta over the tracks of the Western & Atlantic Railroad. The applicants for charter of the North Georgia Mineral Railroad Company had caused all things to be done which were requisite, under the statute, to issuance of the certificate of incorporation. The Secretary of State, apprehending that the application for charter was in the interest of the L. & N. R. Co., preparatory to gaining an entrance into Atlanta without the use of the W. & A. tracks, and becoming a competitor of the State road at the termination of its lease, called upon the attorney-general for an opinion as to whether he had a discretion, under the constitution and laws of Georgia, to refuse the application, and was advised that he did not have any discretion in the matter. Conferences were then held between the Secretary of State, the Governor of Georgia, the Attorney-general, and the attorneys for the applicants for the charter, which resulted in an agreement by which the Secretary of State should not act in the matter of issuing a certificate of charter until the meeting of the next session of the legislature, in order that that body might take action on the subject as it should see fit. When the legislature convened, a bill was passed and approved (Acts 1915, p. 18), as follows:

"An act to amend section 2577 of the Code of 1910, providing for the issuance of corporate powers to railroads, so as to prevent the issuance of any corporate power to any private company to parallel the tracks of the Western & Atlantic Railway, so long as the same is the property of the State, and for other purposes.

"Section 1. Be it enacted by the General Assembly of Georgia, and it is hereby enacted by authority of the same, that section 2577 of the Code of 1910 be and the same is hereby amended by adding the following words: 'No corporate power or privilege shall ever be granted by the Secretary of State to any private company to build a line of railway parallel with the track of the Western & Atlantic Railway so long as the same remains the property of this State.' So that said section when so amended will read as follows:

"'Section 2577. *Corporate powers to railroads granted by*

*Secretary of State.* All corporate powers and privileges to rail-road companies in this State shall be issued and granted by the Secretary of State, upon the terms, liabilities, restrictions, and subject to all the provisions of this article and the constitution of this State. If by reason of any interest in the proposed corporation the Secretary of State should be disqualified, the duties required to be performed by the Secretary of State shall be performed by the Comptroller-general. No corporate power or privilege shall ever be granted by the Secretary of State to any private company to build a line of railway parallel with the track of the Western & Atlantic Railway, or that will depreciate the value of said Western & Atlantic Railway, so long as the same remains the property of this State.'

"Sec. 2. Be it further enacted by the authority aforesaid, that all laws and parts of laws in conflict with this act be and the same are hereby repealed."

While the bill was pending the attorneys for the applicants for charter appeared before the legislature and opposed its passage. After the bill was approved by the Governor, the Secretary of State notified the applicants for charter that he refused to issue a certificate of incorporation, basing his action on authority of the act. Mandamus proceedings were instituted to compel issuance of a certificate, and upon the hearing the judge refused a mandamus absolute. The exception is to this judgment. The other material facts appear in the opinion.

*King & Spalding* and *Dorsey, Brewster, Howell & Heyman,* for plaintiffs. *Clifford Walker, attorney-general, John C. Hart, Horace M. Holden,* and *Mark Bolding,* for defendant.

ATKINSON, J. 1. It is contended that the words, "or that will de-preciate the value of the said Western & Atlantic Railway," as embodied in the act of 1915, are not included in the caption, and that the inclusion of them in the body is violative of art. 3, sec-tion 1, par. 8, of the constitution of Georgia (Civil Code, § 6437), which inhibits the inclusion in the body of an act of matter that is not covered by the caption. The caption contemplates the enact-ment of a law for the protection of the Western & Atlantic Rail-road as against competing lines to be constructed by private com-panies. The caption does not use the words which are quoted above from the body of the act, but the matter expressed by these words is

germane to the object of the act as indicated by the caption. The caption concludes, "and for other purposes." When the caption is considered in its entirety, it is sufficient. *Mayor &c. of Macon* v. *Hughes,* 110 *Ga.* 795 (36 S. E. 247).

2. It was also contended that it did not appear that the proposed railroad would be parallel to the tracks of the Western & Atlantic Railroad, or that it would depreciate the value of that road; and hence that the act has no application. The case was tried upon the pleadings, which set forth in detail the facts as outlined in the statement preceding this opinion. From these it sufficiently appears that the contemplated road would be parallel to and depreciative of the value of the W. & A. Railroad, within the meaning of the act.

3. It was further contended that the act of August 11, 1915, was a special act for which there was provision by an existing general law as set forth in the Civil Code, §§ 2577 et seq., and that the special act was violative of art. 1, sec. 4, par. 1, of the constitution of the State of Georgia (Civil Code, § 6391), which among other things provides that "Laws of a general nature shall have uniform operation throughout the State, and no special law shall be enacted in any case for which provision has been made by an existing general law." The attack thus made upon the act of 1915 involves the character of the law embodied in the Civil Code, §§ 2577 et seq., and likewise the character of the act of 1915, in respect to either or both being special laws or laws of a general nature, within the meaning of the above provision of the constitution. If the former is a general law and the latter a special enactment on the same subject, the latter is unconstitutional; if both are special laws, the latter does not violate that provision of the constitution. *Mathis* v. *Jones,* 84 *Ga.* 804 (11 S. E. 1018). We will first consider the character of the law embodied in the Civil Code, §§ 2577 et seq. Formerly the matter of incorporating railroad companies was a subject exclusively for special legislative enactment. This was changed by an amendment to the constitution of the State (art. 3, sec. 7, par. 18; Civil Code, § 6446), which took from the legislature the power directly to grant charters to railroad companies, and conferred that power upon the Secretary of State to be exercised under laws to be prescribed by the legislature. In 1892 an act was passed by the legislature (Acts 1892, p. 37), pre-

scribing laws for the incorporation of railroad companies, which are now embodied in the Civil Code, §§ 2577 et seq. The legislative history on the subject is set forth in *Hawkinsville &c. Ry. Co.* v. *Waycross R. Co.*, 114 *Ga.* 239 (39 S. E. 844), in which case was involved the validity of an amendment by the legislature to the charter of the Waycross Air-Line Railroad Company before the above-mentioned amendment to the constitution (Civil Code, § 6446), but after an act of the legislature passed in 1891 (Acts 1890-91, vol. 1, p. 416). In holding the amendment to the charter valid, the case was distinguished from any such case as the present, by pointing out that the amendment was prior to the amendment to the constitution. The amendment to the constitution, so far as material to be stated, provides that "All corporate powers and privileges to . . railroad corporations . . shall be issued and granted by the Secretary of State in such manner as shall be prescribed by law; and if in any event the Secretary of State should be disqualified to act in any case, then in that event the legislature shall provide by general laws by what person such charters shall be granted." When it was declared, as in the foregoing excerpt, that charters should be issued and granted by the Secretary of State "in such manner as shall be prescribed by law," the constitution is to be construed as referring to laws to be adopted by the legislature in a constitutional manner. It was not intended that that provision should abrogate the other provisions of the constitution inhibiting the passage of a special act for which there was provision by an existing general law. After the adoption of the above amendment to the constitution, the legislature passed an act for the purpose of carrying its provisions into effect (Acts 1892, p. 37). The provisions of the act were subsequently embodied in the Civil Code (1910), §§ 2577 et seq. The provisions of the act thus placed in the code established comprehensive laws for the grant of charters to railroad companies exclusively by the Secretary of State, applicable to all persons and operative throughout the State, so that persons complying with the law thus made could obtain a charter for a railroad company, authorizing them to construct a railroad to be located anywhere throughout the State. In McElreath on the Constitution of Georgia, § 1136, it is said, upon authority of decisions of this court: "A law is general under the constitution of Georgia

when it operates uniformly throughout the whole State upon the subject with which it purposes to deal." Under this authority the act of 1892, supra, as embodied in the Civil Code, §§ 2577 et seq., was an existing general law for the incorporation of railroad companies. By that law the authority was conferred exclusively upon the Secretary of State, "except in cases of disqualification, when the power was conferred upon the Comptroller-general to act for the State in granting charters to railroad companies." While such general law was in existence, the legislature passed the act of 1915, which is fully set out in the foregoing statement of facts. This act purported to amend the general law in such manner as to prevent the Secretary of State from granting a charter to any private company whose line of railroad would parallel the Western & Atlantic Railroad, or would depreciate the value of the Western & Atlantic Railroad, so long as it should remain the property of the State. As indicated above, if this were a special law its constitutionality could not be sustained as amending the general law. We will now consider the character of this act.

If carried into effect the act would be a limitation upon the power expressly conferred upon the Secretary of State by the pre-existing law, and render inoperative the general railroad law embodied in the Civil Code, §§ 2577 et seq., in that section or territory of the State where a railroad, if constructed, would be parallel to the Western & Atlantic Railroad. The Western & Atlantic Railroad having a fixed position and location, there would be excepted from the operation of the law a well-defined portion of the State along and through which no private railroad could be constructed, and the law would not be territorially general. Under these circumstances the amending act would ordinarily be a special law inhibited by the constitution, under the principles of the cases which will now be noticed. In the case of *Futrelle* v. *George,* 135 *Ga.* 265 (69 S. E. 182), the question was whether the act of 1903 (Acts 1903, p. 26), purporting to amend the general road laws of the State, was a special law and violative of the provision of the constitution prohibiting the passage of a special law upon a subject for which there was provision by an existing general law. The act in question was so expressed as definitely to describe otherwise than by name certain counties which it purported to except from the operation of the act. It was held that the act was a special

law, because it was not territorially general, and for that reason was violative of the provision of the constitution which is now being applied. In the course of the opinion, there was a quotation from the opinion in *Thomas* v. *Austin*, 103 *Ga.* 701 (30 S. E. 627), as follows: "The words 'throughout the State,' as used in the constitution, necessarily imply that in order for a law to partake of the nature of generality, it should, by its terms, show that it is capable of being applied in any county in the State. It is not necessary that every county in the State, at the time of the passage of the law, should fall within its operation, but it is necessary that none should be excepted in such a way that it can never fall within its provisions. If, therefore, a statute should except from its operation even one county, either by name or by the use of such words as clearly indicate that the law can never apply to such county, the act is lacking in the feature of 'territorial generality' and is, therefore, not a general law. We think this case is controlled by the decision in *Lorentz & Rittler* v. *Alexander*, 87 *Ga.* 444 (13 S. E. 632). In that case Justice Simmons said: 'The act of 1872, which first provided for the establishment of county courts, was not a general law having uniform operation throughout the State, for the act itself excepted 46 counties from its operation. The act of 1879, which amended the prior act, was not a general law, for the same reason. It excepted Walton county by name, and all counties in which a city court had been established, and all counties in which county courts were then existing. A law to be general under this section of the constitution must operate uniformly, throughout the whole State, upon the subject or class of subjects with which it purposes to deal. The act under consideration deals with the establishment of county courts. In order for it to be general and have uniform operation throughout the State, it must affect each county in the State. It follows, therefore, that the act in question is not a general law under this clause of the constitution.'" In *City of Cochran* v. *Lanfair*, 139 *Ga.* 249 (77 S. E. 95), one question was whether the act of 1874 (Acts 1874, p. 109), now embodied in the Civil Code, §§ 864 et seq., in regard to the levy of taxes by a municipal corporation, was a general law applicable to all municipal corporations, thereby precluding the legislature thereafter from conferring charter authority upon separate municipalities to levy a different tax rate.

The act of 1874 excepted from its operation the City of Savannah; and it was held that this made the law a special law as distinguished from a general law within the meaning of the constitution, and did not prohibit the legislature from authorizing the City of Cochran to levy a different tax rate. The foregoing decisions dealt with cases where the character of the enactment depended upon its territorial generality. A law may assume a general nature, within the meaning of the constitution, from its subject-matter, notwithstanding it may have only local application. *Mathis* v. *Jones,* supra. But the act of 1915 is not of that character. The act deals with the subject of incorporating railroad companies. There is nothing peculiar to this subject that would render local legislation with respect to it general law. It is urged, that, because it prevents the incorporation of a railroad that would compete with the Western & Atlantic Railroad, the act was in the interest of the State as owner of such road, and that such interest would characterize the subject as one from which generality might be inferred. The State's ownership of the Western & Atlantic Railroad is a business venture, and in no sense an institution for exercise of governmental functions. In *Western & Atlantic R. Co.* v. *Carlton,* 28 *Ga.* 180, it was declared: "When a State embarks in an enterprise which is usually carried on by individual persons or companies, it voluntarily waives its sovereign character, and is subject to like regulations with persons engaged in the same calling." Relatively to such a business, the pecuniary interest of the State could no more give public character to the subject of incorporating railroad companies than could the interest of private persons engaged in the same kind of business. If incidental interest resulting from the restrictions upon the power of the Secretary of State to grant charters could give character to the legislation, it would not be the State alone that would be affected. The proposed incorporators and constructors of railroads, as well as the inhabitants of the section of the State where the restriction is to be applied, would be affected. So long as the act remained of force, there could not be another railroad in that part of the State, and the population would be deprived of the convenience which such a road would afford, and local public institutions would fail to receive substantial aid that would flow from taxation of railroad properties and increased values of property, due to the con-

37

struction of the railroad. The existence and condition of public roads enter largely into taxable values from which the State derives its revenues. The case of *Futrelle* v. *George,* supra, affords an example where this court has held that enactments on that subject which are not territorially general are special enactments. The assessment of the value of property for taxation is also a question which affects the State's revenue. An act was passed in 1885 (Acts 1884-85, p. 449), creating a board of tax assessors for the County of Richmond. In the case of *Bohler* v. *Verdery,* 92 *Ga.* 715 (19 S. E. 36), it was sought to apply the act. It was resisted on the ground that it was repugnant to that part of the constitution which forbids special legislation in any case for which provision has been made by an existing general law. In the course of the opinion it was said by Simmons, J.: "The invalidity of the act was conceded, and may now be regarded as settled, under the decision of this court in the case of *Stewart, tax-collector,* v. *Collier,* 91 *Ga.* 117 [17 S. E. 279]." By the act of 1870 (Acts 1870, p. 428) the Governor of the State was authorized to lease the Western & Atlantic Railroad. By a section of the act it was declared that the lessees should be a body corporate under the name and style of the Western & Atlantic Railroad Company; and succeeding sections conferred specified powers and obligations and imposed duties upon the corporation to the State. The road was duly leased, and the corporation operated the road until the term specified in the act for duration of the charter was about to expire. Certain suits were pending in the courts, and for the purpose of continuing the prosecution and defense of such suits by the corporation an act was passed (Acts 1890-91, p. 280), continuing the term of the charter beyond the time expressed in the lease act above mentioned. It was attempted to apply this act in the case of *Logan* v. *Western & Atlantic R. Co.,* 87 *Ga.* 533 (13 S. E. 516) ; and it was held to be a special act for which there was a provision by an existing general law, and that the act was invalid. The pecuniary interest of the State was more remote in the cases mentioned than in the case under consideration, but the fact remains that the State's pecuniary interest was incidentally affected, and that fact did not cause this court to hold that the act involved was a general law. In other States, in which the language of constitutions on the subject of general and special laws differs from that of our own State (see

*Mathis* v. *Jones,* supra), the courts have ruled differently. But under our constitution, as interpreted and applied by this court, we think the act of 1915 is a special law. It was upon a subject for which provision was made by the general law as contained in the Civil Code, §§ 2577 et seq., and was violative of that part of the constitution which prohibits special laws on subjects for which provision has been made by an existing general law. The act was alleged to be violative of other provisions of the constitution; but as we hold that it is void for the reasons indicated, it becomes unnecessary to deal with other questions in the case.

*Judgment reversed. All the Justices concur, except Fish, C. J., absent.*