MANLEY *et al.* v. McLENDON, Secretary of State.

The act of 1893 (Acts 1893, p. 70) the purpose of which was to carry into effect an amendment of article 3, section 7, paragraph 18, of the constitution of this State (Civil Code of 1910, § 6446), relating to the incorporation of banking companies, contains comprehensive provisions for the issuance of certificates of incorporation to banking institutions by the Secretary of State, including the provision that: "The name and style of the proposed corporation" shall be set forth in the declaration, and that after compliance with specified requirements the Secretary of State shall issue to the subscribers, their associates and successors, a certificate of incorporation under the seal of the State, certifying that

the subscribers, their associates and successors, are a body politic and corporate "under the name and style designated in the declaration," etc. *Held:*

(*a*) Under a proper construction of this statute and the provision of the constitution which it was designed to carry into effect, the Secretary of State has no discretion to refuse to grant a certificate of incorporation for a bank, where there has been full compliance with all the requirements specified in the statute as necessary to the issuance of a certificate of incorporation; but in such circumstances it is his absolute duty to issue the certificate.

(*b*) The foregoing provisions of the act of 1893 were not materially changed by the subsequent general banking act of 1919 (Acts 1919, p. 135).

(*c*) Where five persons addressed ·a petition to the Secretary of State, under the provisions of the above-mentioned statute, for incorporation of a bank, specifying in their declaration as the name of the proposed corporation the "Bank of the State of Georgia," and caused to be fully accomplished all requirements which the statute provided should be necessary to the issuance of the certificate of incorporation, it was the duty of the Secretary of State to issue a certificate of incorporation in the name as specified in the declaration; and if he refused to do so, a writ of mandamus would lie to compel the performance of that official duty.

(*d*) The trial court erred in refusing to grant a mandamus absolute.

No. 4117.   SEPTEMBER 2, 1924.

Petition for mandamus. Before Judge Ellis. Fulton superior court. November 19, 1923.

W. D. Manley and his associates, desiring to organize a banking corporation to be named "Bank of the State of Georgia," with its principal place of business in the City of Atlanta, presented their petition to the Hon. S. G. McLendon as Secretary of State, praying to be incorporated under the laws of this State. The Secretary of State held that the laws vested him with a discretion in the matter, and refused the petition on the grounds that the proposed name would be an unauthorized use of the name of the State of Georgia and create the impression that the corporation was a State institution, and that conference of such name would in effect pledge or loan the State's credit to the corporation in violation of a provision of the constitution. It was stated in the order refusing the petition: "In the pending application I would issue a charter to the applicants for a bank under any other name." The petitioners instituted mandamus proceedings to compel the Secretary of State to issue a certificate of incorporation upon their application for charter giving to the corporation the name "Bank of the State

of Georgia." The petition for mandamus and exhibits which were made a part thereof alleged all that is stated above, and full compliance by the petitioners for charter with all the requisites imposed by statute on individuals applying for such charters as necessary to the issuance by the Secretary of State of a certificate of incorporation. It also alleged: that there is no provision of law or public policy of this State which prohibits the use of the name "Bank of the State of Georgia;" but on the contrary it has been the policy of the State of Georgia for more than 100 years to sanction the use of the name of the State in the exact language and connection desired and applied for by petitioners. The General Assembly of the State of Georgia incorporated a "Bank of the State of Georgia" in 1815, extended the charter in 1830 and again in 1851, established a branch of said bank in Rome, Georgia, in 1855, and amended the charter in 1916, retaining the same name; also the legislature incorporated a second "Bank of the State of Georgia" in 1870, the charter of which last-named bank expired in 30 years. When the General Assembly approved the act of August 16, 1919, commonly known as the banking act, they expressly declined therein a proposed provision vesting in the superintendent of banks or any other administrative or executive officer any discretion as to the issuance of any particular charter to applicants for a proposed banking corporation, the formal requirements of the act being complied with. The General Assembly thereby affirmed the policy of the State as outlined above, and left the defendant without any discretion in the premises, the formal requirements of the act having been admittedly complied with. One of the contentions of petitioners was that there is no prohibition or direction in the law as to what descriptive names a bank shall or shall not use. An answer was filed, averring that in matters of public policy and questions involving the credit of the State the respondent had a discretion, and that his discretion in refusing the application for charter was properly exercised. At the trial it was agreed that no issue of fact was involved, that the allegations of the petition were true, and that the judge should decide the case and render final judgment without intervention of a jury. He refused a mandamus absolute, and the petitioners excepted.

*Smith, Hammond & Smith,* for plaintiffs.

*T. R. Gress, assistant attorney-general,* for defendant.

ATKINSON, J. Formerly all corporations created in this State were chartered directly by the legislature. In 1854 the constitution of 1798, being the constitution then in effect, was amended in the manner provided in the constitution for its amendment, as proposed by the act of the General Assembly approved February 7, 1854 (Acts 1853-4, p. 24). The amendment provided that "The legislature shall have no power to grant corporate powers and privileges, except to banking, telegraph and railroad companies, . . but shall by law prescribe the manner in which said power shall be exercised by the superior or inferior courts, and the privileges to be enjoyed." In article 2, section 6, of the constitution of 1861 it was declared: "The General Assembly shall have no power to grant corporate powers and privileges to private companies, except to banking [and] . . railroad, . . companies; . . but shall by law prescribe the manner in which such power shall be exercised by the courts." McElreath on the Constitution of Georgia, 288, § 498. The exact language quoted above was embraced in the several succeeding constitutions of 1865, art. 2, sec. 6; of 1868, art. 3, sec. 6, par. 5; of 1877, art. 3, sec. 7, par. 18. In *Kehler* v. *Jack Manufacturing Co., 55 Ga.* 639, referring to the provision as contained in the constitution of 1868, it was said in the course of the opinion: "In our judgment, it was the true intent and meaning of the constitution to confer upon the General Assembly the *exclusive* power to grant charters to all the excepted companies named therein." Banking was one of the excepted companies. The above-mentioned provision of the constitution of 1877 was duly amended as proposed in the act approved September 19, 1891 (Acts 1890-91, vol. 1, p. 59). The amendment struck from the provision in the constitution the words, "except banking [and] . . railroad . . companies," and added as a substitute therefor: "All corporate powers and privileges to banking [and] . . railroad . . companies shall be issued and granted by the Secretary of State in such manner as shall be prescribed by law." That amendment modified the former constitutional provisions on the subject, to the extent that authority to grant such powers and privileges to banking, railroad, and other specified companies was conferred on the Secretary of State, to be exercised "in such manner as shall be prescribed by law." This was a restricted authority conferred upon the Secretary

of State. That official could formally issue and grant corporate powers and privileges, but it was required that the legislature should prescribe the manner in which such powers should be granted. This provision of the constitution did not purport to, and did not, authorize the Secretary of State to act without legislative action. In other words, without legislative action the Secretary of State could not move. This is the import of the language employed; and any other construction of the amendment would fail to give effect to the language, "in such manner as shall be prescribed by law." The legislature so interpreted the amendment to the constitution, and after its adoption enacted one comprehensive act prescribing the manner in which the Secretary of State should exercise the power so conferred upon him in relation to the grant of charters to banking institutions (Acts 1893, p. 70), and that statute is now the law. It is as follows:

"An act to carry into effect paragraph 18 of section 7 of article 3 of the constitution of 1877, as amended, in relation to chartering of banks, to provide for the incorporation of banking companies by the Secretary of State, and for other purposes.

"Section 1. Be it enacted by the General Assembly of the State of Georgia, that any number of persons not less than three may form a corporation for the purpose of carrying on the business of banking by filing in the office of the Secretary of State a declaration in writing signed by each of them, stating their names and residences; *the name and style of the proposed corporation* [italics ours]; the location and principal place of business thereof; the amount of the capital stock, and the number of shares into which it is divided; the purposes and nature of the business of the proposed corporation, with any other matters which they may deem it desirable to state. Such declaration must be accompanied by the affidavit of the subscribers, verified by the ordinary of the county in which it is proposed to do business, that twenty-five thousand dollars of the capital subscribed has been actually paid by the subscribers, and that the same is in fact held and is to be used solely for the business and purposes of the corporation, and by a fee of fifty dollars which shall be paid, on filing the application, into the treasury, and the Secretary of State shall not issue any charter before the payment of said fee; and if from any cause the Secretary of State is disqualified to act in any case, then in

that event the application provided by this act shall be filed with the Comptroller-General, who shall perform all the duties herein prescribed for the Secretary of State.

"Sec. II. Be it further enacted, that when the declaration is filed in the office of the Secretary of State, as provided in the preceding section, it shall be the duty of the Secretary of State, upon the application of any one of the subscribers to the same, to certify and deliver to such subscriber a copy of such declaration and affidavit, and it shall be the duty of the subscriber to cause to be published in the official organ of the county in which it is proposed to do business, once a week for four weeks, such certified copy, declaration and affidavit.

"Sec. III. Be it further enacted, that when said declaration and affidavit shall have been published, as provided in the second section of this act, any one of such subscribers may apply to the ordinary of the county in which it is proposed to do said banking business, to certify the fact of the publication of such declaration and affidavit, and it shall be the duty of such ordinary to certify the fact of such publication to the Secretary of State; and upon said certificate being filed by the subscribers in the office of the Secretary of State, *the Secretary of State shall issue to the subscribers, their associates and successors, a certificate of incorporation under the seal of the State, certifying that the subscribers, their associates and successors are a body politic and corporate, under the name and style designated in the declaration* [italics ours], and that such corporation has the capacity and powers conferred, and is subject to all the duties and liabilities imposed by law, and the Secretary of State shall then and there record the declaration, affidavit, certificate of the ordinary and the certificate of incorporation in the order named."

Sec. IV of the act specified the powers and duties which companies chartered under the provisions of the act could exercise. Sec. V provided for the selection of boards of directors by stockholders of corporations organized under the act, to manage and control the business of the corporation. Sec. VI provided for increase or decrease of capital stock of corporations organized under the act on vote of the stockholders voting in a prescribed manner, and declared: "If, at such meeting, the stockholders holding the larger amount in value of the capital stock vote for such increase

or decrease, the proceedings of the meeting must be reduced to writing and entered upon the books or minutes of the corporation, and a copy thereof, verified by the president or cashier, shall be filed and recorded in the office of the Secretary of State, and when so filed and recorded shall become an amendment to said charter." Sec. VII specified a minimum of capital stock that should be required in order to incorporate under the act. Sec. VIII provided for corporate and shareholders' individual liability to depositors and other creditors for debts of the corporation, etc. Sec. IX repealed all conflicting laws.

In section one of article VIII of the general banking act of 1919 (Acts 1919, p. 135) it was provided that any number of persons not less than five could apply for a charter of a banking corporation, in an application in writing to the Secretary of State, in which "the name by which such bank is to be known." shall be alleged; and in section six of article VIII of that act it was provided that on compliance with the requirements of the statute the Secretary of State shall issue the certificate of incorporation "under the name and style designated in the application." The Secretary of State was not given any legislative power by the amendment to the constitution, and he could not add to or take from any of the provisions of the aforementioned statute. It will be perceived that it was expressly provided, in section one of the act of 1893, that incorporators should state in their petition "the name and style of the proposed corporation," and that in section three of the act, it was expressly declared that after compliance with specified provisions of the act the Secretary of State should issue a certificate of incorporation to the petitioners "under the name and style designated in the declaration," and that the corporators should have all the powers and be subject to all the duties provided in the act; also that these provisions were not changed by the subsequent general banking act of 1919 (Acts 1919, p. 135).

It would seem that sufficient has been said to show that it was the duty of the Secretary of State to issue the certificate of incorporation in the name selected by the petitioners, as specified in the declaration; but it will not be out of place to refer to a former decision of this court on a closely related subject. It will be seen, by referring to the above-quoted language from the

amendment to the constitution of 1877, that the Secretary of State was by that amendment given the same authority in reference to the grant of charters to railroad corporations as was given him with reference to banks. After that amendment, the act of 1892 (Acts 1892, p. 37) was enacted, the purpose of which was to carry into effect the constitutional amendment as it related to incorporation of railroads. After the passage of the act application was duly made to the Secretary of State for charter of a corporation to be called North Georgia Mineral Railroad Company. The proposed route of the railroad extended from Atlanta in a northwest direction, a distance of about fifty miles, to a place called "Warford Crossroads," near the town of Cartersville in Bartow County, Georgia. The Western and Atlantic Railroad, owned by the State of Georgia, extended from Chattanooga, Tenn., via Cartersville, to Atlanta, Ga. This property was under lease, soon to expire, to the Louisville & Nashville Railroad Co., a foreign corporation. The latter company owned a railroad extending from Knoxville, Tenn., to Cartersville, Ga., where there was physical connection between its tracks and the tracks of the Western & Atlantic Railroad, and thence the L. & N. Railroad was accustomed to run its trains to Atlanta over the tracks of the Western & Atlantic Railroad. The applicants for charter of the North Georgia Mineral Railroad Company had caused all things to be done which were requisite, under the statute, to issuance of the certificate of incorporation. The Secretary of State, apprehending that the application for charter was in the interest of the L. & N. R. Co., preparatory to gaining an entrance into Atlanta without the use of the W. & A. tracks, and becoming a competitor of the State road at the termination of its lease, called upon the Attorney-General for an opinion as to whether he had a discretion, under the constitution and laws of Georgia, to refuse the application, and was advised that he did not have any discretion in the matter. Conferences were then held between the Secretary of State, the Governor of Georgia, the Attorney-General, and the attorneys for the applicants for the charter, which resulted in an agreement by which the Secretary of State should not act in the matter of issuing a certificate of charter until the meeting of the next session of the legislature, in order that that body might take action on the sub-

ject as it should see fit. When the legislature convened, a bill was passed and approved (Acts 1915, p. 18), as follows:

"An act to amend section 2577 of the Code of 1910, providing for the issuance of corporate powers to railroads, so as to prevent the issuance of any corporate power to any private company to parallel the tracks of the Western & Atlantic Railway, so long as the same is the property of the State, and for other purposes.

"Section 1. Be it enacted by the General Assembly of Georgia, and it is hereby enacted by authority of the same, that section 2577 of the Code of 1910 be and the same is hereby amended by adding the following words: 'No corporate power or privilege shall ever be granted by the Secretary of State to any private company to build a line of railway parallel with the track of the Western & Atlantic Railway so long as the same remains the property of this State.' So that said section when so amended will read as follows: 'Section 2577. *Corporate powers to railroads granted by Secretary of State.* All corporate powers and privileges to railroad companies in this State shall be issued and granted by the Secretary of State, upon the terms, liabilities, restrictions, and subject to all the provisions of this article and the constitution of this State. If by reason of any interest in the proposed corporation the Secretary of State should be disqualified, the duties required to be performed by the Secretary of State shall be performed by the Comptroller-General. No corporate power or privilege shall ever be granted by the Secretary of State to any private company to build a line of railway parallel with the track of the Western & Atlantic Railway, or that will depreciate the value of said Western & Atlantic Railway, so long as the same remains the property of this State.'" Section 2 is the usual repealing clause.

While the bill was pending the attorneys for the applicants for charter appeared before the legislature and opposed its passage. After the bill was approved by the Governor, the Secretary of State notified the applicants for charter that he refused to issue a certificate of incorporation, basing his action on authority of the act. Mandamus proceedings were instituted to compel issuance of a certificate. The petition for mandamus attacked the act of 1915, supra, as unconstitutional on specified grounds, and contended that, with that statute out of the way, the Secretary of State was under absolute duty to issue the certificate of charter and that a mandamus absolute should issue against him. Upon the hearing the

668 MANLEY v. McLENDON. (158

judge refused a mandamus absolute, and the petitioners excepted. The judgment of the trial court was reversed on review, this court. holding that the act of 1915 was unconstitutional and that it was erroneous to refuse the mandamus absolute. *Morrison* v. *Cook,* 146 *Ga.* 570 (91 S. E. 671). On principle, if the Secretary of State did not have a discretion to refuse the certificate of charter in that case, he did not have the discretion asserted in this case. In the light of this decision and all that has been said, it seems manifest that upon a proper construction of the act of 1893, supra, considered in connection with the provision of the constitution which it was designed to carry into effect and the history of that provision of the constitution, the Secretary of State had no discretion whatever as to the name in which he might issue the certificate of incorporation. After the statute had been complied with, it was his absolute duty to issue the certificate of incorporation in the name selected by the petitioners, as expressed in the petition for incorporation. Without force are suggestions (a) that the Secretary of State had a discretion to refuse the application on account of public policy, and (b) that to grant the charter in the name of the "Bank of the State of Georgia," as applied for in the petition, would violate the provisions of article 7, section 5, paragraph 1, of the constitution of this State (Civil Code of 1910, § 6560), which declares: "The credit of the State shall not be pledged or loaned to any individual, company, corporation, or association, and the State shall not become a joint owner or stockholder in any company, association, or corporation." Whether the grant of the particular name applied for would be contrary to public policy or to the last above-mentioned provision of the constitution, are questions that would relate to proper exercise of authority, but have no relevancy on a question as to the existence of authority in the Secretary of State, as provided in the amendment to the constitution of 1877 and the act of 1893 (Acts 1893, p. 70), carrying that amendment into effect. If it should be conceded that public policy and constitutionality of the act of the Secretary of State would be relevant on a question as to existence of a discretion in him as to the name applied for in a petition for charter, it would be proper to say: First, that the constitution and statutory laws declare the public policy; and that the provisions of the constitution and the statute, conferring authority and providing

the manner of its exercise by the Secretary of State, do not expressly or by necessary implication confer a discretion on him, but on the contrary provide expressly what he can do and how he shall do, including, among other things, that he shall issue the certificate of incorporation "under the name and style designated in the declaration." Second, that the loan of credit referred to in article 7, section 5, paragraph 1, of the constitution prohibits the State from assuming financial responsibility, and does not contemplate a case of this kind, where no such liability of the State could arise from the fact that the State had authorized incorporation of the bank in the name of the "Bank of the State of Georgia" and authorized it to engage in business under that name. In the case of *Morrison* v. *Cook,* supra, the State's property was directly affected by a grant of the charter; and if public policy could have had the effect to confer upon the Secretary of State a discretion which the statute did not expressly or by necessary implication give him, it would have done so in that case, and he would not have been required to issue the certificate of incorporation. *Judgment reversed. All the Justices concur.*